[Crim. No. 1416. First Appellate District, Division Two.—December 2, 1927.]

THE PEOPLE, Respondent, v. JOHN BARNETT, Appellant.

Austin W. Arnold for Appellant.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

244

KOFORD, P. J.—Defendant appeals from a judgment of conviction of the crime of robbery in the first degree. The ground of appeal is the alleged insufficiency of the evidence to warrant the verdict.

The complaining witness, upon reaching his home, was informed of a telephone message requesting him to go to the apartment of Miss Harris, a place where he had frequently called before. The message said that a party was in progress. He went there. Miss Harris was not at home, but was out of town and in Del Monte. He was admitted by a man and was almost immediately attacked by two men who robbed him, bound his hands and feet and threatened to shoot him. One of the robbers remained behind him. He could not be described to the police. The other robber worked in front. The complaining witness' description of this man to the police and to Miss Harris subsequently led them to declare in the presence of defendant that the description was that of a man known as "Slick," who was a friend, companion, and "partner" of the defendant. Slick was never found after the robbery. The complaining witness worked himself free from his bindings after the robbers left him lying upon a bed in the apartment. He gathered three or four friends and while returning to the scene of the robbery met the defendant on the street in company with a woman companion with whom the defendant lived. He complained to the defendant of his misfortune. Defendant asked him to say nothing on the street, but took him and his friends into his own apartment, which was just across the hall from the apartment of Miss Harris. Defendant there urged him to say nothing for two or three days and that he would give a party and probably find out who it was that committed the robbery. The complaining witness testified that later at the police station the defendant said that "if I would on the oath of my mother swear to God that I would not press charges if he got me my ring," he would try to get it back if I would go to Oakland with him. There was also testimony that Slick was a friend of defendant's; that the purpose of going to Oakland to try and get the ring was to try and locate "Slick." Defendant refused to go to Oakland in company with the police, but offered to go with the complaining witness. When the complaining witness at the

police headquarters asked defendant, "Jack, why don't you come clean and give me my ring and keys, because you are the fellow who did the framing of this job," defendant said, "Well, if I come clean I do time anyway." Defendant's own version of this was: "They wanted me to go over to Oakland and find Slick. I said, 'Well, if I get the ring what guarantee have I got I will get out of this. What guarantee have I got?'"

Miss Harris testified that she had gone into defendant's apartment on the night of the robbery; that she there saw another man with defendant; that she told them she was then going to Del Monte; that defendant had access to her apartment by means of a key to her door which was kept in a certain hiding place; that she knew no one else besides the defendant who had knowledge of the hiding place of the key.

The arresting police officer testified that defendant, upon being arrested, denied knowing any other name for Slick and declared he knew him only casually. He denied having a gun, although he had a number of automatic pistol cartridges upon his person when searched and had dropped thirty or forty of them in the patrol wagon. Defendant later admitted ownership of the pistol which the police obtained from his apartment by stating to his woman companion that he had sent for it. This pistol was produced in court and said by the complaining witness to be similar to the one used by one of the robbers. Defendant later admitted knowing Slick by his correct name and that he formerly had lived with him.

There is no question about the robbery having been committed at the time, place and manner testified to. We think the evidence for the prosecution which we have reviewed is sufficient to support the jury's finding that the defendant was one of the principals to the robbery.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.