[Crim. No. 3253. Second Appellate District, Division One.—December 8, 1939.]

THE PEOPLE, Respondent, v. WILLIAM C. WALLACE et al., Appellants.

Morris Lavine and Paul E. Tapley for Appellants.

Earl Warren, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

WHITE, J.—This is an appeal by defendants from orders denying their motions for new trial and from judgments pronounced against them after their pleas of guilty to the crime of robbery. The only point here involved is as to the degree of the robbery, and we are asked, pursuant to section 1181 of the Penal Code and upon the authority of *People* v. *Kelley,* 208 Cal. 387 [281 Pac. 609], and *People* v. *Covington,* 1 Cal. (2d) 316 [34 Pac. (2d) 1019], to reduce the robbery conviction to that of second degree.

Appellants pleaded guilty to the crime of robbery, and by appropriate waivers of jury submitted to the court for determination the question of the degree of the admitted offense. Thereupon the court took evidence, from which it appears that appellants robbed one Hugh Weir while he was acting as a service station attendant in the city of San Gabriel in Los Angeles County. The robbery was committed about 2 o'clock on the morning of March 4, 1939, when appellants came into the service station in an automobile and one of them asked the attendant, Weir, for five gallons of gasoline. The latter put the gasoline in the tank of appellants' automo-

bile, and after some conversation between one of the appellants and Weir as to how to get to San Diego and what road to take, Weir received a dollar bill from one of the appellants in payment for the gasoline and went into the station to make change. The three appellants followed him into the station. When they were inside the station one of the appellants had his hand in his right hand coat pocket and said "All right, Doc, let's have it." Convinced that the three men were robbers, the complaining witness put up his hands and went to the back of the station which was about three feet from the cash register, while two of the appellants went over to the cash register. While the appellants were at the cash register one of them made the suggestion that the victim be searched, pursuant to which suggestion appellant Glover proceeded to and did search Weir, finding upon the latter's person a 38-caliber revolver. Appellant Glover then asked the complaining witness what he was doing with the gun, and pulling the hammer back, said, "You see, it is cocked," whereupon he pointed it at the head of the complaining witness for a fraction of a minute. About that time the other two appellants were through looting the cash drawer and were on their way out of the station. One of the appellants told the complaining witness to sit on the floor for twenty minutes. The sum of $13.08 constituted the fruits of the robbery.

█ Appellants' sole ground of appeal is that from the foregoing facts the taking of personal property from Mr. Weir in his immediate presence was accomplished without the use of a deadly weapon, and that when the only dangerous or deadly weapon figuring in the commission of the offense was the weapon obtained as part of the loot of the robbery, such possession of a dangerous or deadly weapon does not measure up to the requirements of section 211a of the Penal Code, which denounces as robbery of the first degree any robbery which is perpetrated by a person while armed with a dangerous or deadly weapon. This claim of appellants is without merit. Section 211 of the Penal Code defines robbery as the felonious *"taking"* of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear. This section is followed by section 211a, which provides that any robbery which is *"perpetrated"* by a person

being armed with a dangerous or deadly weapon is robbery of the first degree. From a reading of the facts of this case it is at once apparent that appellants were engaged in the "taking" of the personal property of the victim Weir at the time they became armed with the 38-caliber revolver. Appellants being thus armed while they "perpetrated" the robbery, it matters not from what source they obtained the dangerous or deadly weapon in question.

It is the law that the "perpetration" of the crime of robbery is not completed the moment the stolen property is in the possession of the robbers. The escape of the robbers with their ill-gotten gains by means of arms is as important to the execution of the robbery as gaining possession of the property. In the case before us not only was a gun used and pointed at the complaining witness, but his own gun was taken from him, and it obviously constituted a means of preventing the complaining witness, by the use of his revolver, from making any attempt to frustrate or thwart the perpetrators of the crime. As was said in *People* v. *Boss,* 210 Cal. 245, 251 [290 Pac. 881], "The *escape* of the robbers with the loot, by means of arms, necessarily is as important to the execution of the plan as gaining possession of the property. Without revolvers to terrify, or, if occasion requires, to kill any person who attempts to apprehend them at the time of or immediately upon gaining possession of said property, their plan would be childlike." (Italics added.) In *People* v. *Dowell,* 204 Cal. 109 [266 Pac. 807], where the robber was fleeing from the scene of the robbery carrying what he thought was the bag and money of the victim and fired upon and killed a pursuing officer of the law in order to effect his escape while retaining the stolen property, the Supreme Court said, "We are satisfied that the crime of robbery had not been completed in any sense at the time of the unlawful shooting, but on the contrary the murder was committed in the perpetration of such crime."

Robbery, being a combination of the crime of assault with that of larceny, includes, as does larceny, the element of asportation; and the appropriation of another's property at the scene of the hold-up is a transaction which continues after the perpetrators depart from the place where the property was seized. (*People* v. *Raucho,* 8 Cal. App. (2d)

655, 664 [47 Pac. (2d) 1108]; *People* v. *Green*, 93 Cal. App. 435, 436 [269 Pac. 687]; *People* v. *Melendrez*, 25 Cal. App. (2d) 490, 494 [77 Pac. (2d) 870].)

What we have here held does no violence to the views expressed in *People* v. *Black*, 73 Cal. App. 13, 29 [238 Pac. 374], cited by appellants. That case construes section 460 of the Penal Code, which provides, among other things, that burglary is of the first degree when the burglar "while in the commission of such burglary arms himself with a deadly weapon". In that case the weapons stolen in the burglary were unloaded, and no assault was made upon any person. The conclusion therein reached by the court was based upon its reluctance to hold that a burglar who arms himself with a deadly weapon when in his burglarizing he steals an unloaded firearm and carries it away as part of his loot, is guilty of burglary of the first degree. To hold otherwise, says the court in the cited case, would be no more correct than to say that "one commits an assault with a deadly weapon when he points an unloaded firearm at another". There is no analogy or similarity between the case cited by appellants and the one now under consideration by us.

Neither the definition of robbery nor the specification of the degrees thereof contemplate that any fine distinctions shall be drawn for the benefit of highwaymen. No reason can be found in the law that requires a robber to be armed at all times during a robbery. If at any time during the progress of the "taking" or while the robbery is being "perpetrated", the robber arms himself or becomes armed with a deadly weapon, he brings himself within the pale of section 211a of the Penal Code. As was said by this court in *People* v. *Stevens*, 32 Cal. App. (2d) 666, 670 [90 Pac. (2d) 595] (hearing denied by the Supreme Court), "Statutes should be construed, whenever reasonably possible, with a view to carrying out the intent and purpose which actuated their adoption and to secure the objective sought to be achieved by the legislation in question. The laws here in question were designed for the protection of the community and its residents, and not the lawbreaker." To achieve the manifest purpose of the legislation it must be held, and we do so hold, that any defendant participating in a robbery who becomes armed, either during the "taking" incidental

to the robbery or while the offense is being "perpetrated", is guilty of robbery of the first degree.

■ Appellants' claim that "under no circumstances could the defendants Wallace and Bechdolt be guilty of first degree robbery. The three men entered the station unarmed, and it was not the intent of any of them to be armed at the time of the commission of the felony", must be rejected. Acting in concert as were the three appellants herein, when one of their number armed himself the consequences thereof were visited equally upon his associates who were aiding and abetting him in the commission of the crime.

The judgments and the orders denying the motions for new trial are, and each of them is, affirmed.

York, P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1940. Carter, J., voted for a hearing.