[Crim. No. 2504.   First Dist., Div. One.   Mar. 15, 1948.]

THE PEOPLE, Respondent, v. CHARLES T. WARD et al., Defendants; CLAYTON D. CIRVEAU, Appellant.

Edward E. Craig for Appellant.

Fred N. Howser, Attorney General, David K. Lener, Deputy Attorney General, J. F. Coakley, District Attorney, and Vernon L. Goodin, Deputy District Attorney, for Respondent.

PETERS, P. J.—Charles T. Ward and Clayton D. Cirveau were charged with robbery. Ward pleaded not guilty and was convicted as charged. Cirveau first pleaded not guilty and then withdrew that plea and entered a plea of guilty. Testimony was taken by the court to establish the degree of robbery as to defendant Cirveau. As to defendant Cirveau the court found the degree to be first degree. Cirveau alone appeals from that portion of the judgment of the trial court determining that his offense was first degree, it being contended that, as a matter of law, it was second degree.

The pertinent statute is section 211a of the Penal Code. It provides: "All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree."

It is the contention of appellant that the evidence shows that the weapon here used was a toy cap pistol, and it is urged that such weapon is neither "dangerous" nor "deadly." The point is without merit.

The record shows that on March 12, 1947, Ward and appellant robbed a drugstore operated by Clarence J. De Laney in Oakland. De Laney testified that these two men came into the store; that Ward was carrying the gun; that they ordered him into the back room and robbed him; that he saw a "black gun pointing at me"; that at the preliminary hearing he had testified that it looked like a real gun to him, and that he had then stated that it was a real gun; that that was still his statement; that "I can say it looked like a real gun . . . an automatic . . . a pistol"; that he had not then carefully examined it.

Appellant and Ward both testified that the gun used by Ward in the holdup was a toy cap pistol resembling a .32 automatic. Appellant testified that, on the occasion of the robbery, they used an automobile borrowed from one Jack Houston, and that the toy pistol was in the car; that Ward had this toy pistol in his hand when they entered the store; that neither he nor Ward had any other gun at the time of the robbery; that after the robbery they tossed the toy pistol onto the back seat of the automobile. Ward corroborated this testimony.

The record also shows that about two weeks after the De Laney robbery Ward was arrested in San Francisco while

in the company of one Beal, appellant not being present. Ward was then driving the same automobile used in the De Laney holdup. The officer who arrested Beal and Ward testified that on that occasion he took a gun away from Beal, and, when he asked Ward where his gun was, Ward told him that it was in the back of the front seat cushion; that he felt behind the cushion and found a loaded .32 automatic; that thereafter he, the officer, searched the automobile for other guns; that he removed the front and back cushions; that he did not find any other gun and did not, in particular, find any toy pistol under the back seat.

Walter M. Houston, an uncle of appellant, was then called as a witness. He testified that after the robbery he had purchased the automobile involved from his stepson, Jack Houston; that toward the end of July or the first of August, 1947, he had removed the back cushion of the automobile and there found a toy pistol.

The .32 automatic and the toy pistol were then exhibited to De Laney, but the witness could not state "positively" which weapon had been used. Both Ward and appellant thought that the toy pistol, which was introduced into evidence, was the gun used in the holdup.

On this evidence the trial court fixed the degree of the crime at first degree. It is apparent that this determination can be sustained on either or both of two theories. In the first place, while it is true that De Laney could not positively state that Ward menaced him with a real gun, his testimony shows that he "thought" it was a "real gun"; that it "looked like a real gun", and that he would state that it was a real gun. When this testimony is considered, together with that of the policeman who arrested Ward several weeks later while Ward was driving the same automobile used in the De Laney robbery, which testimony was to the effect that Ward then admitted a .32 loaded automatic found behind the front seat cushion was his, and that the officer then searched under the back cushion and did not find the toy pistol that Houston claims he found several months later, it is at once apparent that, under elementary appellate principles, the implied finding of the trial court that a real gun was used in the De Laney robbery is amply supported.

In the second place, even if the evidence uncontrovertibly demonstrated that a toy pistol had been used (which it does not), that would not mean that the finding that such weapon

was a "dangerous" one within the meaning of section 211a of the Penal Code is not supported. ■ There can be no doubt at all, in this state, that an unloaded gun can be a "dangerous" or "deadly" weapon within the meaning of section 211a. (*People* v. *Raleigh,* 128 Cal.App. 105 [16 P. 2d 752]; *People* v. *Egan,* 77 Cal.App. 279 [246 P. 337]; *People* v. *Freeman,* 86 Cal.App. 374 [260 P. 826].) The rationale of these cases is best expressed in the following excerpts from *People* v. *Freeman, supra,* at page 376:

"Notwithstanding the fact that ordinarily and in and of itself the instrumentality may be in fact comparatively harmless, if, considering the attendant circumstances, together with the present ability of its possessor, the instrument is capable of being used in a deadly or dangerous manner, for the purpose of the particular occasion only, the character of the instrument may be so established.

"In the instant case it is apparent that, although the defendant who had possession of the unloaded pistol at the time the robbery occurred was ten or twelve feet distant from the victim, it was possible for such defendant within a very short space of time to have used the pistol as a bludgeon or club, thus rendering it a most 'dangerous' weapon within the meaning of the statute."

■ It is apparent that if the trier of the facts can find that an unloaded gun can be a "dangerous" weapon within the meaning of the section because it could be used as a bludgeon, a "toy" pistol of the same size and shape likewise can be found to be a "dangerous" weapon. The evidence shows that this toy pistol in size and shape resembles a .32 automatic. It also shows that it was a metal gun. It was exhibited to the trial court, and has been brought to this court as an exhibit. An examination of it shows that it weighs one-half pound, is 6½ inches long, and that it looks like a real gun. Under such circumstances the trial court was amply justified in finding that the "toy" pistol was in fact a "dangerous" weapon. This was the precise holding of this court in a toy pistol case in *People* v. *Coleman,* 53 Cal.App.2d 18 [127 P.2d 309].

The judgment appealed from is affirmed.

Bray, J., concurred.

WARD, J.—I concur in the judgment. I am satisfied that proof to a moral certainty and beyond all reasonable

doubt was presented in the trial court that the "weapon" used in the perpetration of the offense charged against the appellant was a "dangerous" weapon. The exhibit in question is not a legal document which requires judicial interpretation, but merely a mechanism the dangerous character of which is a question of fact. It is my opinion that the evidence contributed by members of a reviewing court has no weight unless a higher tribunal directs that questions of fact other than those referred to in the state Constitution shall be determined by an appellate court. In brief, this is a case in which justices of an appellate court affirm the trial court's findings by personal "examination" of the facts. If such affirmation is allowed, then negation of such conclusion should be permitted. This leads to substitution of factual conclusions by an appellate court though there may be no abuse of discretion by the trial judge or jury.