[Crim. No. 5033. In Bank. Feb. 24, 1950.]

THE PEOPLE, Respondent, v. L. O. WALLIN, Appellant

Robert E. Austin, John N. Helmick and A. K. Phelps for Appellant.

.

Fred N. Howser, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

EDMONDS, J.—Defendant Wallin was charged in two counts with violations of section 476a of the Penal Code, in that he drew two checks upon a bank in favor of a named payee, knowing that the amount of money to his credit was not sufficient to meet the checks. The appeal is from a judgment of conviction on each count, and presents for decision the questions: (1) whether the evidence is sufficient to support a finding of the necessary criminal intent; and (2) whether a defendant can consent to the trial of a criminal action upon a transcript of the preliminary hearing, where the witnesses have been cross-examined by his counsel in the defendant's presence.

Wallin waived a jury trial and, upon stipulation, the People's case was submitted upon the transcript of the preliminary hearing. He testified in his own behalf and was found guilty, as charged.

The record shows that Wallin was in the wholesale lumber business, operating with a narrow capital margin and employing two workmen. In the early part of March, he bought plywood from R. & S. Engineering & Manufacturing Company which he then sold to a Texas purchaser. Wallin paid for the plywood by a personal check in the amount of $3,213. A few days later, Robert Schultz, the owner and operator of the R. & S. Engineering & Manufacturing Company, asked Wallin if he could use more plywood. Wallin replied affirmatively and the evidence tends to show that he intended to sell the additional material to the Freuhauf Trailer Company of California.

In order to clean and prepare the plywood for this sale, Wallin and his two workmen went to the R. & S. plant where they used that company's tools in sanding and cleaning the plywood. While they were at work, Schultz advised Wallin that the check for $3,213 had been dishonored. Wallin's explanation of such action was that the Texas purchaser's check had not yet been credited to his account. The two men went to the bank, where they ascertained Wallin had slightly more than $1,800 to his credit. In order to make good on the dishonored check, Wallin withdrew $1,800 in cash, which he gave to Schultz with a check for the balance of $1,413. Wallin testified that at the time he gave this check to Schultz,

he told him he "would need a few days" until a check from some Texas people had cleared. Subsequently, Wallin's check was paid.

Later, Wallin gave Schultz the two checks of $1,955.20 and $3,504.32, respectively, which are the basis of the present action. They were drawn by Wallin, to the order of Robert Schultz, and represented the purchase price of plywood which was delivered to him at the time he issued them. Neither check was honored.

Schultz was asked during the preliminary hearing, "Isn't it a fact, Mr. Schultz, that you held those checks up to wait for Mr. Wallin to deliver this merchandise to the Fruehauf Trailer Company and get their check to deposit in his bank to meet these checks as they came?" In response, Schultz stated: "No, sir. When those checks were given to me, . . . [Mr. Wallin] told me that the checks were absolutely good." Schultz further testified that he had later received $2,400 in part payment of them.

Wallin testified that he had been engaged in the wholesale builders business for 25 years. He and his men completed sanding and cleaning the plywood on March 25th, when it was ready for loading and delivery to the Fruehauf Trailer Company. The Fruehauf Company did not issue its check immediately because all of the plywood did not pass the specifications required by the buyer. For that reason it was found necessary to sell a part of the plywood elsewhere. Eventually, Wallin received a check for $1,200 from Fruehauf for the plywood which was acceptable. This check was endorsed to Schultz. Some of the rejected plywood was sold to Standard Wood Supply Company for $1,600, but its check to Wallin for that amount was not honored by the bank, the drawer having insufficient funds to meet its payment.

Upon cross-examination, Wallin admitted that when he gave the two checks, he knew he did not have money enough in the bank to cover them. At these times, the record shows, he did not have more than $25 to his credit. In response to the question, "Did you have any understanding with Mr. Schultz that the check (of $1,900) was to be held?" Wallin replied: "He asked me where the plywood was sold. I said Fruehauf Trailer Company. He said very well, to make it thirty days. I said, 'No, not in this case. They will give a check right away when the plywood is delivered.' So I said, 'By the time that that check is in there, my check will be okay.' He said, 'Okay.' "

Wallin further testified as follows: "Q. You mean that you discussed that with Mr. Schultz and he said he would hold the checks until you got the check from these Texas people to cover it? A. That he would hold them, yes, definitely."

█ Wallin contends that the evidence does not support a finding of the criminal intent to draw a check for the purpose of defrauding the payee. According to his theory, the evidence compels the conclusion that at all times Schultz knew his account was overdrawn and payment of the check given to him was dependent upon the sale of the plywood to the Fruehauf Trailer Company. It is argued that since Schultz continued with the second plywood transaction after the first check was dishonored and then made good, he was fully aware of the status of Wallin's bank account, tacitly accepting that factor as one of the elements of the transaction. As he states it, he "did not in so many words, perhaps, advise the prosecuting witness that there were not sufficient funds to cover the check. But surely it cannot be contended that express words of warning are necessary."

The record does not sustain these contentions. Schultz stated on cross-examination that he had received the money on the $1,413 check before he accepted the two checks which are the basis for this prosecution. He also testified that Wallin told him those checks were "absolutely good." The evidence upon the question of intent to defraud is in sharp conflict, but it is sufficient to support the finding of criminal intent and the judgment of conviction upon both counts. The court must assume in favor of the verdict the existence of every fact which the trier of fact could have reasonably deduced from the evidence and then determine whether or not the guilt of the defendant is deducible therefrom. The question for the appellate court to pass upon is whether there was evidence in the record justifying the inference of guilt. (*People* v. *Deysher*, 2 Cal.2d 141 [40 P.2d 259]; *People* v. *Payton*, 6 Cal.App.2d 198 [44 P.2d 376].) Certainly it cannot be said, as a matter of law, that there is no evidence in the present record from which the trial court could have drawn inferences necessary to support a finding of guilt.

Considering the procedure of the trial, Wallin's attorney cross-examined the prosecution's witnesses during the preliminary hearing and in Wallin's presence. In the superior court it was stipulated, in the defendant's presence, that the People's case be submitted upon the transcript of the preliminary hearing.

The Sixth Amendment of the Constitution of the United States provides: ''Section 1. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.'' The California Constitution does not have any provision relating to confrontation of witnesses (''See: Article I, section 13, California Constitution; *People* v. *Myers,* 77 Cal.App. 10 [245 P. 1106] ), but a statutory right is accorded to the accused in section 686 of the Penal Code. That section provides:

''In a criminal action the defendant is entitled: . . .

''3. To produce witnesses on his behalf and to be confronted with the witnesses against him, in the presence of the court, except that where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness; or where the testimony of a witness on the part of the people, who is unable to give security for his appearance, has been taken conditionally in the like manner in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, the deposition of such witness may be read, upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found within the state. . . .''

■ The right of the accused to confront witnesses at his trial, whether reserved in the Constitution or in statutes, may be waived. (*Diaz* v. *United States,* 223 U.S. 442 [32 S.Ct. 250, 56 L.Ed. 500] ; *Schick* v. *United States,* 195 U.S. 65 [24 S.Ct. 826, 49 L.Ed. 99] ; *Kemp* v. *Government of Canal Zone,* 167 F.2d 938; *People* v. *Bird,* 132 Cal. 261 [64 P. 259] ; *People* v. *Valdez,* 82 Cal.App.2d 744 [187 P.2d 74] ; *People* v. *Noorlander,* 76 Cal.App.2d 274 [172 P.2d 766].) ■ The defendant has not been deprived of his rights under the United States Constitution where, as here, his attorney cross-examined the prosecution's witnesses at the preliminary hearing, in the defendant's presence, and thereafter the defendant

waived his right of confrontation during trial by stipulating that the People's case be submitted upon the transcript of the preliminary hearing.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.