[Crim. No. 4460. Second Dist., Div. Two. Feb. 15, 1951.]

THE PEOPLE, Respondent, v. JAMES J. NEWMAN, Appellant.

Bernard C. Brennan for Appellant.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted on ten counts of robbery with a deadly weapon, and of three prior felony convictions. He demands a reversal of the judgments and the order denying his motion for a new trial on the grounds that they are not supported by the evidence; there is no proof that he was armed with a deadly weapon; he was irreparably prejudiced by his examination as to prior convictions.

The complaining witnesses were engaged at a card game in a club room in the San Pedro area of the city of Los Angeles when three men entered the room, terrorized them with firearms and robbed them of various amounts of money and, in some instances, of their wallets. The robbers said, "put up your hands—this is a hold-up." Appellant was the leader of the trio and gave the directions. Holding his gun in his right hand he said, "I want you fellows to do what you're told and no one will get hurt." The victims were told to stand by and face the wall and remain so for three minutes after the bandits should leave. When one of the latter had difficulty in opening the cash register, he said, "Well, we may have to shoot somebody."

In pursuance of his attempt to establish an alibi, appellant's counsel closely cross-examined each of the witnesses as to the identity of appellant as the person they had seen commit the robberies. While not each of the witnesses was firm in the identification of appellant there was substantial proof thereof. Complainant Mihaljevich though doubtful of the identity testified, "I'm not sure . . . but he looks like the man who was there." When complainant Zuvich was asked to identify anyone in the courtroom as one of the robbers he pointed to appellant. Complainant Lucev testified that appellant looked like one of them. Complainant Dragin testified that appellant looked like the robber. Complainant Marincovich testified that appellant looked like the robber who had a blue automatic pistol. Pointing to appellant complainant Vitalich testified, "I am positive sure that this is the man here" who had the gun. Complainant Carr did not think that appellant was the armed robber but admitted having testified

at the preliminary hearing that he thought appellant was the man. Complainant Zurich was positive that appellant was one of the bandits. He was only 20 feet away from him; he looked at him pretty good seven or eight minutes. Also, Zurich identified appellant for the police. The witnesses Kaloper, Jaconi and Kucich who were present at the robbery declared appellant was one of the armed bandits.

Appellant told the arresting officers that he stayed in the city of Los Angeles in the vicinity of about 30 miles north of the club room where the robbery occurred until about 9:30 p. m., then went to Hollywood which is about 8 miles west of the civic center of Los Angeles, then to a barroom at the corner of Figueroa and Pico streets which is about one mile south of the civic center. At no place did he meet anyone he knew.

When appellant took the witness stand he testified that he left home about 9 o'clock, drove his father's car to downtown Los Angeles; entered a theater about 9:30 p. m.; remained until 11:30; stopped at the barroom at Pico and Figueroa and from there drove home where he arrived about 1 a. m. He denied having been in San Pedro or that he committed the robbery. He testified that he saw two picture shows; that he did not remember having told the officers that he remained at home until about 8 or 8:30 p. m. and denied having told them that "I wouldn't tell you anything if I knew it."

Such evidence is clearly sufficient to support the verdicts. Proof of identity is a matter for the jury's determination and where there is substantial testimony in support of the identity and where the trial judge has denied a new trial, the judgment will not be reversed because of the failure of the memory of one or more witnesses to the event under consideration. The rule which applies to the finality of the jury's finding of the corpus delicti applies equally to the identification of the criminal. Lack of positiveness of identity of the accused does not destroy the value of the identification. (*People* v. *Ash,* 88 Cal.App.2d 819, 825 [199 P.2d 711].) When a verdict has substantial proof to support it and the trial judge has denied a retrial, it cannot be set aside for lack of evidence. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

Appellant contends that only one witness definitely identified him as the armed bandit who led his companions into the clubroom. Even were this true, when believed by the jury, the testimony of one witness is sufficient to support a verdict

for the reason that such testimony is not inherently incredible. (*People* v. *Alexander*, 92 Cal.App.2d 230 [206 P.2d 657].) ▮ The uncertainties in the testimony of the several witnesses were matters to be directed to the attention of the jury and the trial court and cannot be urged on appeal. (Code Civ. Proc., § 1847; *People* v. *Skaggs*, 80 Cal.App.2d 83, 97 [181 P.2d 390]; *People* v. *DeWitt*, 98 Cal.App.2d 709, 714 [220 P.2d 981].)

However, we are not forced to depend for affirmance upon the testimony of one witness. Seven complainants and their associates gave such proof of the crime and of appellant's identity as to justify a finding of his guilt.

▮ Despite his own testimony in support of his alibi, appellant did not satisfactorily account for his time on the evening of the robbery. He contradicted the story he had told to the investigating officers. In his statement to the latter he made no mention of having attended a show but when he came to give his testimony at the trial, he placed himself in a theater between 9:30 and 11:30 p. m. during which he witnessed two pictures, the details of one of which he could not remember. Not a witness was produced to corroborate his testimony that he had attended the theater or visited the barroom. No one testified as to his movements during the fateful evening. Finally, his testimony was impeached by his three prior felony convictions.

▮ Appellant makes the novel contention that none of the wallets taken from the victims was produced at the trial or found on his person at the time of arrest. No court or jury would be so naive as to expect a bandit to tie up his loot in a handsome package and preserve it for exhibition. His instinct to avoid apprehension is too deeply ingrained for such a performance. The same is true as to the revolver which, appellant argues, was never found or described. ▮ He contends that there is no evidence that the revolver used was lethal. Such proof is not essential. ▮ Appellant and his companions supplied that element of the crime by training their guns on the victims, requiring complainants to lift their hands, to make no unfriendly gesture or ''we may have to shoot somebody.'' Actions speak louder than words. The declarations of appellant and his confederates, a part of the res gestae, are sufficient proof of the deadly character of the guns they carried. Out of an abundance of the heart, the mouth speaketh. From their movements and threats uttered during the exciting moments of the crime the jury were

entitled to infer that they carried deadly weapons. (*People* v. *Montgomery,* 15 Cal.App. 315, 318 [114 P. 792].) In *People* v. *Ash, supra,* we held that "where a dangerous or deadly weapon is employed by a robber to enforce his demands it is immaterial whether it was used or exposed to view." In the instant case appellant's revolver accomplished its purpose by its challenge that the actor was ready, able and willing to make it deadly. His representation that the weapon he flourished was deadly and that he would kill if forced to do so was intended by him to have his victims accept his threats as true and thereby to immobilize them by a reasonable fear. (See *Cittadino* v. *State,* 199 Miss. 235 [24 So.2d 93].) Finally, wholly apart from the evidence or the authorities, appellant's point is answered by his stipulation made at the commencement of the trial, to wit, certain of the complainants would if called to the stand testify that they were robbed at the club room on the date of the crime by three men, each of whom was armed with a deadly weapon.

██ Appellant contends that his substantial rights were grievously and irreparably prejudiced by his examination as to prior convictions. In this there was no error. Having taken the witness stand and denied the accusation, he subjected himself to impeachment by showing that he had suffered prior felony convictions and the nature of them. By such impeachment the prosecutor did not violate the provisions of section 1025 of the Penal Code. (*People* v. *Romer* (1933), 218 Cal. 449, 452 [23 P.2d 749]; *People* v. *Peete* (1946), 28 Cal.2d 306, 319 [169 P.2d 924]; *People* v. *O'Brand* (1949), 92 Cal. App.2d 752, 755 [207 P.2d 1083]; *People* v. *Youders* (March, 1950), 96 Cal.App.2d 562, 567 [215 P.2d 743].) ██ But the contention that the impeachment was violative of any right of appellant is wholly without merit in view of the fact that not an objection was entered to any of the questions and neither was any misconduct assigned nor motion made to admonish the jury to disregard the questions or the answers. (*People* v. *O'Brand, supra; People* v. *Ash,* 88 Cal.App.2d 819, 829 [199 P.2d 711].)

The judgment and the order denying the motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied February 26, 1951, and appellant's petition for a hearing by the Supreme Court was denied March 15, 1951.