[Crim. No. 7427.   Second Dist., Div. One.   May 31, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JACK RAY ETHRIDGE, Defendant and Appellant.

Daniel N. Busby for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Otto J. Hetzel, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In count 1 of an information the defendant was accused of robbery, committed on February 24, 1960. In count 2 he was accused of attempted robbery, committed on February 27, 1960. It was alleged therein that in 1950 defendant had been convicted of robbery. Trial by jury was waived. Defendant was adjudged guilty on count 1, and not guilty on count 2.

It was established that a robbery was committed on February 27, 1960, about 8:30 p. m., at a liquor store. The victim of the robbery identified defendant as the robber. Defendant asserted an alibi.

Since defendant's appeal relates principally to a proceeding which was referred to as a "new trial," it will be necessary to state details of that proceeding.

The judge, after announcing his findings as above stated, said: "I will enter a motion for a new trial and for probation and sentence." Then (on July 11, 1960) he made an order continuing those matters to August 1, 1960. There were further continuances to August 8, 9, and 15. On August 15, 1960, counsel for defendant (not present counsel) filed his own affidavit "In Support of Motion for New Trial." He stated therein that before the trial he had received the names and addresses of certain witnesses, but he was unable to locate some of them, namely, the wife of defendant and one Gelabert who were at defendant's home on February 24, 1960 (the date of the robbery); he (affiant) had requested a continuance "trusting" that the witnesses might be located, and the case was continued twice; defendant "maintained" that he was at home at the times the alleged acts were committed, and that the witnesses who would so testify could not be located in time for the trial; that the witnesses had been located and served with subpoenas to appear on said August 15. In that affidavit, counsel for defendant requested that the court "vacate and set aside the judgment so rendered as to count one of the information and permit the witnesses to so testify."

On August 15 the judge, on his own motion, continued the matters to August 16.

With respect to the motion for a new trial, the reporter's transcript shows: That at the beginning of the session on August 16, counsel for defendant said: "[W]e wish to put on some additional evidence as to Count I . . . which evidence, counsel for defendant was unable to . . . produce at the time of trial . . . due to the . . . circumstances as set forth in the affidavit, and we have the witnesses now present, and with your Honor's permission and granting us permissing to put on this evidence, we wish to proceed." The deputy district attorney made statements to the effect that the proposed evidence was not newly discovered evidence; and that the names of the witnesses had not been given to the sheriff in an attempt to locate the witnesses. Counsel for defendant said that he had had difficulty in locating the witnesses, but finally had located them (alibi witnesses), including the common-law wife of defendant—and that she was present in court. The judge said: "I am inclined to allow them to produce what they can. I will have to grant the motion for a

new trial and then you can resubmit it on the testimony heretofore taken plus whatever testimony is taken today." The deputy said: "Whatever your Honor desires." The judge said: "I will grant the motion for a new trial." Then it was stipulated that the matter might be determined by the court upon the testimony theretofore taken and upon any further evidence that is taken. Counsel for defendant said that this is only as to count 1. The judge said: "That is correct. I found him not guilty on Count 2 . . ., and we are going to consider all the evidence that we have taken up to now, plus whatever evidence you are going to present today." Counsel for defendant said: "That is correct." The judge said: "That will be the order of the Court. You may proceed."

With respect to the proceedings on August 16, the minutes of the court show, in part: "Motion for new trial as to Count 1 is granted. Jury trial is again waived and cause is submitted on testimony taken at first trial. People rest. Peter Ernest Galbraith and Wilbur Charles McCloud are sworn and testify on behalf of the defendant. Defendant rests. Cause is argued. Defendant is found 'Guilty' as charged. Fixed at second degree. Submitted on probation report on file. No finding on priors."

It thus appears from the reporter's transcript that the matter of a jury trial was not mentioned in connection with the proceedings on August 16; and it appears from the minutes of that day that a jury trial was waived.

Defendant appeals from the judgment of conviction on count 1.

Appellant contends (through counsel who was not present at the trial) that the court imposed, as a condition of granting a new trial, the condition that the case be resubmitted on the former testimony plus testimony to be presented by defendant on that day, August 16; and that the imposing of the condition prevented defendant from objecting to the condition and deprived him of a trial by jury. He argues to the effect that all testimony should have been produced anew (as provided in Pen. Code, § 1180), and that there should have been a jury trial unless he personally waived a trial by jury (as provided in Const., art. I, § 7).

█ It is to be noted that the alleged motion for a new trial, which was made on the ground of newly discovered evidence, was not supported by an affidavit of a witness by whom newly discovered evidence was to be given. (See Pen. Code, § 1181.) The affidavit was made by the attorney for

defendant. It thus appears that there was not a sufficient legal basis for a new trial on the ground of newly discovered evidence, and the court would have been justified in denying the motion. It appears further, however, that the defendant was not seeking a new trial in the sense that there would be a retrial, but, on the contrary, that the finding of guilt on count 1 would be vacated so that defendant might present additional alibi evidence for the consideration of this trial judge. The attorney's affidavit does state in the caption thereof that it is an affidavit in support of a motion for a new trial, but the prayer of the affidavit, and the oral statement of the attorney at the hearing of the motion, indicate that the object to be accomplished by the motion was an opportunity to present the testimony of additional alibi witnesses for the consideration of this trial judge. The prayer of the affidavit asks that the court "vacate and set aside the judgment" as to count 1 and permit the alibi witnesses to testify. The oral statement of the attorney, at the beginning of the proceeding on August 16 (when motion was to be considered) was in substance that "we wish to put on some additional alibi witnesses as to count 1," that the witnesses which could not be produced at the trial are "now present," and that with the permission of the court "we wish to proceed." Thereupon, the judge, after saying in effect that he was inclined to allow defendant to produce the evidence, said he would grant the motion for a new trial, "and then you can resubmit it on the testimony heretofore taken plus whatever testimony is taken today." The attorney for defendant and the deputy district attorney then stipulated that the matter might be determined "by the Court" upon the testimony theretofore taken and upon any additional "evidence that is taken this morning." After the attorney for defendant said that "this" (stipulation) was only as to count 1 because the court had already acquitted defendant as to count 2, the judge said, "[W]e are going to consider all the evidence that we have taken up to now, plus whatever evidence you are going to present today." The attorney for defendant said, "That is correct."

Although, as above stated, the trial judge could have ruled that the affidavit regarding the motion was not a sufficient legal basis for a new trial and that his finding of guilt should stand as announced, he chose to give defendant an opportunity to present the additional evidence in the manner and at the time requested by defendant, that is, by vacating

the finding of guilt as to count 1 and permitting the additional witnesses who were present to testify at that time. It is true that the judge, in announcing the procedure by which he intended to accomplish the objective of receiving the additional evidence as requested by defendant, stated that he would grant the motion for a new trial, but it is also true that at the same time and as a part of such intended procedure he said that the matter might be resubmitted on the former testimony and the additional testimony. Defendant's attorney expressly agreed to such procedure. It was stipulated that the matter might then be submitted to the court upon the former testimony and the additional testimony. Submitting the cause, by stipulation, upon the former testimony was analogous to submitting a cause, by stipulation, upon the testimony of a preliminary examination. Such latter procedure is recognized as a proper method of presenting a cause for trial. (*People* v. *Wallin*, 34 Cal.2d 777 [215 P.2d 1].)

The ruling herein was in favor of the defendant—he obtained what he was seeking—that is, a reopening of the trial so that the testimony of the additional alibi witnesses would be included as a part of the evidence at the trial. It was obvious, of course, that such additional evidence could not be included as a part of that evidence if the defendant required a jury trial. There was no indication that he wanted a jury trial. He had just been acquitted on count 2 in a nonjury trial. He, personally, had waived a jury trial when the taking of the former testimony was commenced. Under the circumstances herein, his request that the court vacate the finding of guilt as to count 1 and then and there hear the testimony of the additional witnesses, and his acceptance of the method of procedure announced and followed by the court, were tantamount to expressly and personally waiving a jury trial in the further proceeding. Defendant was not prevented from objecting to the procedure which was calculated to, and which did, afford him his requested opportunity of presenting additional evidence; and he was not deprived of the right of trial by jury.

Appellant also contends that the evidence was insufficient to support the judgment of conviction. He argues to the effect that the victim's testimony identifying the defendant as the robber was uncertain and unreliable.

On February 24, 1960, about 8:30 p. m., while Mr. Copeland, an employee in a liquor store in Los Angeles, was standing at the counter in the store, he saw a man walk toward

the counter. With his left hand, the man was holding a gauze bandage, about the size of a folded handkerchief, over his face—the bandage was over his mouth and the lower part of his nose. The man said, "Open up the register." At that time the man had a small automatic gun in his right hand and was pointing the gun at the employee, who opened the register. The man said, "Lie down on the floor." While the employee was on the floor he heard the man rifling the cash register. When the man was leaving, he said, "You had better lie there about two minutes or I will blow your head off." After the man had left the store, the employee checked the register and found that approximately $151 had been taken.

The employee testified, in part, as follows: He looked at the man about four or five seconds, from the time the man entered the store until he told the employee to lie on the floor. He (employee) heard the man's voice while the man was in the store and he has heard his voice since that time. The defendant's voice is the same as the voice of the man who was in the store. From what he saw of the man's face, that is, from the middle of his nose up to the top of his hair, he (employee) is positive to that extent that defendant is the man who was in the store. Defendant is approximately the same build and size of that man. He (employee) saw the defendant at the police station about a week after the robbery, and he identified defendant from a group of pictures. Thereafter, on that same day, he saw the defendant in the custody of Officer Crowley, and at the "show-up," and at the arraignment.

Then counsel for defendant asked Mr. Copeland, on cross-examination: "And that is how you identified him?" He replied, "Yes." Then that counsel asked: "And you say that this is the man, although you had seen the face of the man that came into your place, only from the bridge of his nose up?" He replied, "Yes."

Mr. Copeland testified further: When he looked at the pictures, he did not pick out one of them as the picture of defendant. He did not identify defendant from the pictures. He identified defendant and thought that he was the man because he recognized his face. He (witness) was not sure "from the picture" whether this was the man, but after he saw the defendant three times on that day (at the police station) he was sure that defendant was the man who was in the store.

Defendant testified that he did not commit the robbery; he

did not know where the liquor store was located; he had never seen Mr. Copeland; he never owned a revolver; he is a roofer and was doing that kind of work on February 24, 1960; on said day, around 7:30 p. m., he was at his home. On cross-examination, he said that about two weeks before February 24 he had been hit on the head while he was in Palm Springs, and he had worn a bandage on his head but he was not wearing it on February 24; on February 23 he was in a doctor's office regarding the injury, and when he left the office he had a bandage on his head; he had been convicted of armed robbery in 1950.

At the further hearing on August 16, one Gelabert was called as a witness by defendant. He was referred to in the attorney's affidavit (in re hearing additional witnesses) as a witness who could not be located in time for the trial. He testified that on February 24, 1960, he was at a party at defendant's home from 6 o'clock in the evening until approximately 2 o'clock the next morning; others who were at the party were the defendant, one McCloud, and defendant's wife; he (witness) had been living there since February 12; defendant did not leave the premises on February 24; defendant, McCloud, and the witness had been drinking during that day and they kept drinking at night.

McCloud, a witness called by defendant at the further hearing, testified that on February 24, 1960, he was at defendant's home from 6 o'clock in the evening until approximately 1:30 o'clock the next morning; defendant was there during that time; he took defendant to a doctor's office on February 23.

Defendant's wife, who was referred to in the attorney's affidavit as a witness would testify at the further hearing, was present at the further hearing but she was not called as a witness. The attorney for defendant said that she had told him that she would be an adverse witness.

The matter of identification of the robber was a question of fact for the determination of the trial judge. The evidence was sufficient to justify a finding that defendant committed the robbery.

The judgment is affirmed.

Lillie, J., concurred.

FOURT, J.—I concur in the affirming of the judgment in this case because I can do nothing else under the circumstances. There are, however, some factors in this matter

which in my opinion warrant further attention. It is to be noted that the information charged "[t]hat at the time of the commission of the above offense, said defendant was armed with *a deadly weapon* to wit, *one small caliber automatic pistol"* and "[t]hat before the commission of the offenses hereinbefore set forth in this information, said defendant, Jack Ray Ethridge, was in the Superior Court of the State of California, in and for the County of Los Angeles, convicted of the crime of robbery, a felony, and the judgment of said court against said defendant in said connection was on or about the 14th day of March, 1950, pronounced and rendered and said defendant served a term of imprisonment therefor in the State Prison."

Evidence was taken at the trial on July 11, 1961. At the conclusion of the testimony on the 11th the prosecution waived the opening argument and counsel for defendant indicated that he desired to say something. The judge, before any argument was commenced in behalf of defendant stated that he, the judge, was finding the defendant not guilty of the offense charged in the second count of the information, even though the defendant was positively and unequivocally identified by the victim in that episode. In counsel's argument to the judge he stated with reference to the prior conviction charged in the information (which the defendant frankly admitted in his cross-examination) that "he got into trouble—he got in some trouble *and we have stipulated that he served time on that"* and "I think he learned a lesson on this first robbery."

The prosecutor then argued very briefly in a closing statement and upon the court's asking the prosecutor "Do you submit it?" an answer was made in the affirmative. The judge then said, "I will find him guilty on Count 1. I will enter a motion for a new trial and for probation and sentence." This in the face of there being no request for either of such by the defendant or his counsel and further despite the fact that under the circumstances of the case and the law the defendant could not possibly be eligible for probation.

There then followed an argument by counsel for the defendant wherein he urged the judge to release the defendant upon his own recognizance pending further proceedings. The order finally was made that the defendant be released upon the bail previously set and made.

A check of the records shows that there was on file in Superior Court case No. 130730 (the case referred to as the prior conviction in the information) a copy of a judgment

showing in effect that the defendant was convicted of armed robbery, and as heretofore stated the defendant admitted such on cross-examination. The prosecution, in spite of such record, for some inexplicable reason did not offer into evidence any document to establish the prior conviction. The probation officer's report in the present case recites with reference to the previous conviction that the defendant was received into the state prison on April 1, 1950 (supported by criminal records and records of the state prison system), *that "he was involved in the robbery of a motel—that he was on parole at the time of such robbery and that he had been associated in other robberies."*

On August 16, 1960, the matter came on for further hearing. After listening to the additional witnesses of the defendant and each side submitting the case, the judge said, "I feel we have wasted the morning. I will find him guilty," and upon request of the prosecutor to fix the degree the judge said, *"First degree."*

Thereupon counsel for the defendant stated that no gun had been introduced into evidence and the prosecutor advised that they would "stipulate that the Court may resolve that conflict upon the information furnished in the probation report." The judge then announced that he had read the probation officer's report and that said report noted that no gun was introduced into evidence and that he would *"make it second degree"* and further that "having in mind the purpose of the indeterminate sentence law, *I will make no finding on the prior."*

The probation officer's report to which the judge referred states, among other things: "[t]he testimony is to the effect that defendant *used a weapon at the time of the offense* and since the weapon was not recovered, it cannot be stated whether it was loaded or not." The report further discloses that the defendant apparently started his criminal career at a very early age—that a psychiatric evaluation showed him to be "egocentric—unsympathetic, ruthless—" and that he had other unsocial characteristics.

It is not necessary under the law in this state that a gun be loaded to constitute it a dangerous or deadly weapon and where the robber is shown to have been carrying, at the time of the offense, a firearm such fact will justify the conclusion that he was armed with a dangerous weapon, even though it was not loaded, and he is therefore guilty of first degree robbery. (*People* v. *Egan,* 77 Cal.App. 279 [246 P. 337];

*People* v. *Shaffer,* 81 Cal.App. 752 [234 P. 666] ; *People* v. *Freeman,* 86 Cal.App. 374 [260 P. 826] ; *People* v. *Barnett,* 87 Cal.App. 243 [261 P. 1068] ; *People* v. *Ward,* 84 Cal.App.2d 357 [190 P.2d 972] ; *People* v. *Raner,* 86 Cal.App.2d 107 [194 P.2d 37].)

The evidence at the trial demonstrated that at about 8 :30 p. m. the defendant entered the place of business attended by the lone storekeeper, that defendant had what appeared to be a handkerchief or piece of gauze held over the lower part of his face with his left hand and an *automatic pistol held in his right hand and pointed at the storekeeper.* As defendant approached the storekeeper he said, ''Open up the register.'' The storekeeper opened the register and was then directed to lie down on the floor face down. He did so. The defendant then rifled the cash register, took considerably over $100 therefrom and then stated to the storekeeper, ''You ——— lie there for about two minutes or I will blow your head off.''

The law, as I understand it, is clear in a case such as this. In *People* v. *Wallace,* 36 Cal.App.2d 1 [97 P.2d 256], Mr. Justice White appropriately stated: ''Neither the definition of robbery nor the specification of the degrees thereof contemplate that any fine distinctions shall be drawn for the benefit of highwaymen.''

In *People* v. *Raleigh,* 128 Cal.App. 105, 108 [16 P.2d 752], Mr. Justice Spence, in speaking of the classes of dangerous or deadly weapons said for the court:

''From a reading of the decisions on the subject we are of the opinion that a distinction should be made between two classes of 'dangerous or deadly weapons.' There are, first, those instrumentalities which are weapons in the strict sense of the word, and, second, those instrumentalities which are not weapons in the strict sense of the word, but which may be used as such. The instrumentalities falling in the *first class, such as guns,* dirks and blackjacks, which are weapons in the strict sense of the word and are 'dangerous or deadly' to others in the ordinary use for which they are designed, may be said as a matter of law to be 'dangerous or deadly weapons.' This is true as the ordinary use for which they are designed establishes their character as such.'' (Emphasis added.)

In this case the evidence is crystal clear to the effect that the defendant not only *had an automatic pistol in his possession and was armed with such but he exposed it to view in a threatening manner in the commission of the crime and further stated to the storekeeper in effect that he would blow his head*

*off if he did not comply with his directions.* Whenever the perpetrator of a robbery is armed with an instrumentality of the first class as described in *People* v. *Raleigh* he is, as heretofore indicated, guilty of robbery of the first degree as a matter of law.

The proof was abundantly made in this case that the defendant pointed the gun at the storekeeper, that the defendant was within close proximity of the storekeeper and there certainly was the threat, both expressly and impliedly made that the gun would be used to shoot the storekeeper if the storekeeper did not comply with the directions ordered by the defendant. Under such circumstances a judgment of robbery in the first degree is the only proper determination. (See *People* v. *Seawright,* 72 Cal.App. 414 [237 P. 796]; *People* v. *Hall,* 87 Cal.App. 634 [262 P. 50]; *People* v. *Milburn,* 89 Cal.App. 526 [265 P. 285]; *People* v. *Newman,* 102 Cal. App.2d 302 [227 P.2d 470].)

As heretofore indicated counsel for the defendant made the novel contention that the gun used in the crime was not introduced into evidence and therefore the court should find that no gun was used in the commission of the robbery and further that the crime should be robbery in the second degree. In speaking of a similar argument it was stated in *People* v. *Newman,* 102 Cal.App.2d 302 [227 P.2d 470] at page 306: "No court or jury would be so naive as to expect a bandit to tie up his loot [or his gun] in a handsome package and preserve it for exhibition. His instinct to avoid apprehension is too deeply ingrained for such a performance."

In *People* v. *Miller,* 190 Cal.App.2d 361, 364 [11 Cal.Rptr. 920] (hearing denied), the court said: "The next claim is that he could not be found guilty of first degree robbery because the guns were not produced at the trial. There is no requirement that the weapon be produced. Both robbery victims testified that both appellant and his accomplice were armed with guns which they used in accomplishing the robbery. This evidence was sufficient to support the finding of first degree robbery."

I realize that it is exclusively for the trial judge to determine the degree of a crime where there is substantial evidence to support a choice of degrees. However, in this case there is no evidence whatsoever to support a judgment of robbery in the second degree as distinguished from robbery in the first degree. Penal Code section 211a states as follows: "All robbery which is perpetrated by torture or *by a person being*

*armed with a dangerous or deadly weapon is robbery in the first degree.* All other kinds of robbery are of the second degree.''

Robbery in the first degree is punishable by imprisonment for not less than five years; robbery in the second degree for not less than one year. (Pen. Code, § 213.)

Penal Code section 3024, subdivision (b) provides in part in effect that a person previously convicted of a felony in this state and armed with a firearm at the time of his commission of the offense shall suffer a minimum sentence of four years.

It is readily apparent that here in this case of an ''egocentric'' and ''ruthless'' defendant who was plainly guilty of first degree robbery (if he was guilty of any offense at all), who had suffered at least one prior conviction for an armed robbery and served a term in San Quentin Prison therefor, is now by the tactics of the prosecutor and the trial judge found to be in effect a first offender and was sentenced as such; furthermore that because the gun which was used was not introduced into evidence the court apparently found the robbery to be of the reduced variety, namely robbery in the second degree. In other words the defendant was found to be an unarmed first offender.

It is a felony for an ex-convict (without a permit) to have an automatic pistol in his possession. (Pen. Code, § 12025.)

Penal Code section 12022 provides in part in effect that any person who commits a felony while armed with a pistol, without having a license to carry such, and is convicted thereof, shall in addition to the punishment prescribed be punishable by imprisonment for not less than five years nor more than ten years. Such additional period of imprisonment shall commence upon the expiration of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence. Furthermore upon a second conviction under like circumstances the additional period of imprisonment shall be for not less than ten years.

It may be good news to armed robbers and especially the ex-convict armed robbers to learn that if they get rid of their guns following a holdup and do not get caught with the gun which they used in the commission of a robbery that there is at least one court which may declare the offense to be a second degree robbery and thereby flaunt the law. It is bad news for law enforcement officers and the sound administration of justice.

The procedure which was followed in this case can do nothing but add to the disrespect of the administration of justice of which there is already far too much. It is little wonder that the statistics with reference to crimes of violence show a rapid increase of such offenses in this state.

In my opinion it is bad enough to coddle the so-called passive offenders of the law but when a court pampers the ruthless and violent criminal who states in the course of his offense, "I'll blow your head off" and is prepared to do just that, then indeed we can expect anything in the administration of the criminal law. The defendant should have been convicted of first degree robbery and found to have been previously convicted of armed robbery and sentenced as such.

A petition for a rehearing was denied June 20, 1962.