[Crim. No. 789.   Third Appellate District.—September 23, 1924.]

THE PEOPLE, Respondent, v. S. G. DeVERRE, Appellant.

[1] CRIMINAL LAW — ROBBERY — READING OF CODE SECTION DEFINING
    DEGREES—INSTRUCTIONS—APPEAL.—In a prosecution for robbery,
    where the trial court, in its instructions, read to the jury the code
    section defining the two degrees of robbery, which code section is
    free from ambiguity, and it is possible that a few jurors, after
    hearing the code section read, would be unable to define accurately
    the difference between the two degrees of robbery, it does not
    follow that the instructions given by the court which consisted in
    the reading of the several paragraphs of the code section should
    be held misleading or erroneous.  That the jurors brought in a
    verdict lesser in degree than they might have done and that the
    testimony in the case would have sustained a verdict of guilty of
    robbery in a higher degree affords no ground for reversal and
    does not authorize the appellate court in concluding that the jury
    was misled by the instructions of the trial court.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Charles O. Busick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Markham Johnston and Howe, Hibbitt, Johnston & Meldon for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted of the crime of robbery in the second degree and appeals from the order denying his motion for a new trial and the judgment of conviction herein.   The facts shown by the testimony set out in the transcript are substantially as follows: That on or about the eleventh day of September, 1923, Bert Stoner, and two other persons were riding in the toilet of a flat car, which was part of a train traveling from Brighton Junction through the town of Lodi, San Joaquin County; that just after pulling out of Brighton Junction, Stoner and his com-

———————————————————————————

1.  See 14 R. C. L. 774.

panions were ordered to come out of the toilet and put up
their hands. This order came from a negro, who held a
revolver in his hands and compelled them to submit to a
search. Stoner and his companions were then lined up in
front of the defendant and there searched by him. After
being held up Stoner and his companions were told by the
negro holding the gun to "hit the dirt"; they complied with
the order and jumped off the train. Stoner informed the
authorities of what had happened and the train was stopped
at Lodi. There the defendant, while lying on the top of a
freight-car, was shot in the arm and in one leg and taken
into custody by the authorities. In the defendant's pos-
session was found Stoner's pocketbook but no money. The
defense set up by the defendant was that he had first been
held up by a negro and then was compelled to search Stoner
and his companions. Upon the conclusion of the testimony
the court gave the code sections defining robbery in the first
and second degrees and also submitted to the jury three
forms of verdict, one for finding the defendant guilty of
robbery in the first degree, one for finding the defendant
guilty of robbery in the second degree, and one for finding
the defendant not guilty. The jury returned a verdict of
robbery in the second degree. [1] It is urged by appellant
that the instructions of the court were misleading and that
the defendant was either guilty of robbery in the first de-
gree or not guilty and that the jury would not have returned
the verdict they did unless they had been misled by the
instructions given by the court. We do not see that this
conclusion necessarily follows. The code section (Pen. Code
sec. 211a) is free from ambiguity and while it is possible
that a few jurors, after hearing the code section read, would
be unable to define accurately the difference between the
two degrees of robbery, it does not follow that the instruc-
tions given by the court which consisted in the reading of
the several paragraphs of the code section should be held
misleading or erroneous. That the jurors brought in a ver-
dict lesser in degree than they might have done and that
the testimony in this case would have sustained a verdict of
guilty of robbery in a higher degree affords no ground for
reversal and does not authorize this court in concluding that the
jury was misled by the instructions of the trial court. The

jury had a right to take into consideration the fact that the defendant still had in his possession some of the property taken from Stoner and also that he did not get off the train when the others were commanded so to do, but continued on his journey with the negro whom he claims first held him up. The defendant's story is plausible, but the jury had the advantage of the presence of the defendant and evidently came to the conclusion that the recital of what took place lacked the essential element of truth. Why the jury found the defendant guilty only of robbery in the second degree is a matter of speculation in which it would serve no useful purpose for this court to indulge. That the jury did not literally follow the instructions of the court constitutes no reason for our holding that the instructions were misleading. The code section defining robbery and its different degrees is probably as clear as any other definition that could be given; but, in any event, it is the law of this state and it is not error for the trial court to read the section just as it is written. The judgment and order appealed from are affirmed.

Hart, J., and Finch, P. J., concurred.