[Crim. No. 1184.   Second Appellate District, Division Two.—April 24, 1925.]

THE PEOPLE, Respondent, v. BEN MARVIN SEA-WRIGHT et al., Appellants.

[1] CRIMINAL LAW—ROBBERY — GUILT OF ONE OF ROBBERS — INSUFFI-CIENCY OF EVIDENCE.—In a prosecution against three defendants for robbery, two of the defendants being positively identified by the victims of the robbery as the men who committed the robbery, the evidence was insufficient to support the finding of the jury that the third defendant was also guilty, where the only evidence tend-ing to connect the latter with the robbery was the testimony of two officers that they found him in the company of the other two defendants shortly after the robbery, and the fact that he related an improbable story while on the stand.

[2] ID. — IDENTITY OF ACCUSED — CONFLICT OF EVIDENCE — APPEAL.— A conflict of evidence as to the identity of one on trial accused of having committed an offense presents a question wholly within the province of the jury, and their conclusion will not be dis-turbed on appeal.

[3] ID.—ROBBERY COMMITTED WITH GUN — FINDING — EVIDENCE. — In such action, the finding of the jury, as implied by its verdict, that one of the robbers held up one of the victims with a pistol or revolver, while the other robber accosted the other victim, must be sustained on appeal, where one of said victims testified that the man who held her up used a "gun."

[4] ID.—SECTION 211a, PENAL CODE—CONSTRUCTION.—Section 211a of the Penal Code, which declares that "All robbery which is perpe-trated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree," does not require proof that there was an actual assault upon the person with a deadly weapon, but that the accused was armed with a dangerous or deadly weapon.

[5] ID. — LOADED GUNS — FINDING—EVIDENCE. — In such prosecution, there was sufficient evidence to justify the jury in finding that the guns used by the robbers were loaded.

(1) 34 Cyc., p. 1808, n. 78.   (2) 17 C. J., p. 264, n. 89; 34 Cyc., p. 1810, n. 89.   (3) 17 C. J., p. 264, n. 89; 34 Cyc., p. 1810, n. 89. (4) 34 Cyc., p. 1797, n. 9, p. 1799, n. 21; 40 Cyc., p. 852, n. 1. (5) 34 Cyc., p. 1808, n. 78, p. 1809, n. 80.

1.   See 22 Cal. Jur., 859.
5.   Burden of proving that weapon was not loaded in prosecution for assault with firearms, note, 42 L. R. A. (N. S.) 975.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Russ Avery, Judge.    Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Lyle Pendegast for Appellants.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CRAIG, J.—Appellants and one Kent were charged with the crime of robbery, a felony.    Three separate verdicts were returned by a jury, convicting each defendant of robbery in the first degree.    Seawright and Eberle appeal from orders denying their motions for new trial, and from the judgments based upon said verdicts.

The three defendants were tried jointly, and each one testified upon the trial.    A written confession of the defendant Kent was introduced in evidence, but the jury were instructed to regard it only as against him, and that nothing therein contained should be considered as evidence against these appellants.    The latter appeal upon the ground of alleged insufficiency of evidence to sustain a conviction of robbery in the first degree, as defined by section 211a of the Penal Code.    Robbery, as denounced by the statute, is defined and classified as follows:

"Sec. 211.    Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

"Sec. 211a.    All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree.    All other kinds of robbery are of the second degree."

It is contended by appellants that the evidence was not sufficient to warrant the jury in finding that they committed the offense charged; that if committed by them they used the firearms which were introduced in evidence; or, that if appellants were believed by the jury to have committed the robbery with firearms, the guns were loaded at the time of the holdup.

The principal facts presented to the jury were as follows: On July 4, 1924, at about 11:30 P. M., one Myron G. Stevens and a Miss Beyerle were seated in a coupe, parked near the curb at the Pasadena hospital, in Los Angeles County, where the latter was employed; two men, later identified as defendants Eberle and Kent, approached the car, pointed guns at the occupants, and ordered them to get out, which they did; Eberle started to search Miss Beyerle, but when assured by her that she had nothing, he desisted; Kent searched Stevens' pockets and took from him a watch, wallet, and money, a bank-book, some keys, and certain papers. Witness Enders testified that as he drove through Fair View Avenue he saw a Ford standing with lights out, just south of the front door of the hospital, and that it was occupied by one man, who was wearing a straw hat; that two other straw hats had been placed up in the back of the machine so that they were visible through the small window, from the rear; the witness made several tours around the block and on one of these occasions saw two men in the shadows of some trees near said hospital, one of whom wore a cap; he notified the Pasadena police department of the occurrence, and upon his return to the scene the Ford was moving away, in a southerly direction. At about 12:15 or 12:30 A. M. a Ford car was stopped at North Broadway bridge in a direct route southerly from Pasadena, by Officers Dunn and Hackett, and the occupants thereof, who proved to be the defendants Eberle, Kent, and Seawright, were there arrested and the automobile was searched. At the time of such arrest all three men were wearing straw hats, and in their machine were found two caps, an automatic pistol, and a revolver, both of which were loaded, and the property which had about an hour previously been taken from Stevens.

After the arrest the defendant Kent signed a statement involving all three, but this having occurred in the absence of the defendants Eberle and Seawright, it was excluded as to them; Seawright was asked where one of the guns came from, but did not reply; the caps found in the machine were tried on the defendants and were found to be of the same sizes as the straw hats; when arrested, defendant Kent was driving the Ford, Eberle sat on the other side, and Seawright sat between them. Upon the trial Kent and Eberle were positively identified by Stevens and his com-

panion as the men who committed the robbery, and it was shown that they wore caps at the time.

The appellants denied participation in the robbery and testified that they had never been in Pasadena; that they had immediately preceding their arrest left Lincoln Park, where they had spent several hours.

[1] The most that a thorough review of the record warrants with respect to appellant Seawright is, we think, that he was apprehended under circumstances which created a strong suspicion of his complicity in the offense. Enders did not see more than that some person occupied the Ford near the Pasadena hospital, and, of course, did not pretend to identify him at the time of the trial; the officers arrested him when riding with the other two men, in an automobile which contained the stolen property; he wore a straw hat, as did the occupant of the car in Pasadena, but this fact alone would bear but slight significance. It is not shown that he knew anything about the stolen articles. He testified that he and his codefendants drove from Los Angeles around through Glendale, Hollywood, and Burbank, and thence to Lincoln Park, where they arrived at about 10 o'clock P. M., and remained there for a period of about two hours. It is apparent from the evidence before us that the other two defendants were in Pasadena at the time of the robbery, and that the jury disregarded this story of Seawright, but he denied having any knowledge of the loot being found in the car, or that the two caps were taken therefrom. The only evidence tending to connect Seawright with the robbery, therefore, is the testimony of the two officers that they found him in the company of Eberle and Kent, and the fact that he related an improbable story while on the stand. We do not think this was sufficient evidence to support the finding of the jury, and as to Seawright the judgment must therefore be reversed.

Appellant Eberle likewise denied any knowledge of the transaction and testified that he had not been in Pasadena, but he was positively identified by Miss Beyerle, and there can be but small doubt that he changed hats before the arrest, which may well have led the jury to believe that he had not been at the park, as he claimed, and that he entertained a consciousness of guilt. As was said in a recent case, ''the defendant's story is plausible, but the jury had

the advantage of the presence of the defendant and evidently came to the conclusion that the recital of what took place lacked the essential element of truth.'' (*People* v. *De Verre,* 68 Cal. App. 742 [230 Pac. 197].)   **[2]**   A conflict of evidence as to the identity of one on trial accused of having committed an offense presents a question wholly within the province of the jury, and their conclusion will not be disturbed on appeal. (*People* v. *Connelly,* 195 Cal. 584 [234 Pac. 374].)

**[3]**   The same ruling must also necessarily apply to the finding of the jury, as implied by its verdict, that appellant Eberle held up Miss Beyerle with a pistol or revolver, while his companion accosted Stevens, since the young woman testified that he used a ''gun,'' but that she did not know its character or whether or not it was loaded.

We shall now proceed to consider the contention of appellants that since there was no direct evidence that the firearms were loaded at the time of the robbery, the judgment should be reversed upon the ground that it was not shown that the offense was committed with a dangerous or deadly weapon.

Appellants cite *People* v. *Sylva,* 143 Cal. 62 [76 Pac. 814], which involved a charge of assault with a deadly weapon. The supreme court said that ''the verdict shows that the jury did not believe that the gun was loaded.'' No such situation exists here. Section 245 of the Penal Code defines assault with a deadly weapon to be an actual assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury; but robbery of the first degree, as we have indicated, consists of the felonious taking of personal property from another by means of force or fear by a person who is *armed* with a *dangerous or deadly* weapon.   There is no claim that the victims in the case at bar were not put in fear when robbed, nor is there any evidence that the weapons were not loaded at that time. **[4]**   Section 211a of the Penal Code does not require proof that there was an actual assault upon the person with a deadly weapon, but that the accused was armed with a dangerous or deadly weapon. An unloaded revolver has repeatedly been held to be a dangerous weapon, according to the manner in which it may be used, when in the hands of one intent upon committing crime, if capable of produc-

ing great bodily injury, and considering the proximity of the person in control to the intended victim. (*State* v. *Godfrey,* 17 Or. 300 [11 Am. St. Rep. 830, 20 Pac. 625]; *State* v. *Hammond,* 14 S. D. 545 [86 N. W. 627].) In *State* v. *Lynch,* 88 Me. 195 [33 Atl. 978], it was said that "deadly" and "dangerous" are not equivalents; that a dangerous weapon may possibly not be deadly, but that a deadly weapon, one which is capable of causing death, must be dangerous; and in all of these cases the question of the dangerous or deadly character of the weapon was said to be one for the jury to decide.

[5] But the jury might reasonably have believed that the guns were loaded. Appellants were arrested within an hour after the holdup, and the officers testified that both guns were then loaded. Since the jury apparently believed that appellants committed the robbery near the Pasadena hospital, not alone merely armed with the guns but actually by the use thereof, it was within their province also to conclude that the defendants would not perpetrate the crime with unloaded weapons, and reload them during the hour before starting upon a peaceful drive. We think all of the circumstances, including the conduct of the robbers at the time, would have amply justified the jury in finding that the guns were loaded when Stevens was compelled to give up his property.

*People* v. *Montgomery,* 15 Cal. App. 315 [114 Pac. 792], involved a charge of assault with a deadly weapon. Montgomery leveled a rifle at one Freeholdt, who ran behind a post and called for help; the accused was thereafter led away and finally went home. The rifle was found to be loaded when officers arrived, but there was no evidence tending to show that it was loaded at the time of the assault, and Montgomery testified that it was not then loaded, yet the jury found him guilty as charged, and its decision was upheld on appeal.

We think that in the instant case there was sufficient evidence of appellants having so conducted themselves as to justify the jury in drawing the inference that the guns were loaded and that appellants intended to discharge them, if their commands to "put them up" were not obeyed, for the purpose of committing bodily injury.

The judgment and order as to appellant Eberle are affirmed, and those of appellant Seawright are reversed.

Works, J., concurred.

FINLAYSON, P. J., Concurring.—I concur. The serious question in the case is whether either of the robbers was armed, at the time of the robbery, with a dangerous or deadly weapon. There is no direct evidence that either of the pistols which the robbers pointed at the complaining witness and his companion was loaded, i. e., no one testified that he saw some person load either weapon or that he saw cartridges in either pistol. Wherefore appellants earnestly insist that there is no evidence to support a verdict of robbery in the first degree, as defined in section 211a of the Penal Code.

An empty revolver merely pointed at a person, and not used to strike him with, is neither a dangerous nor a deadly weapon, however much the person at whom it is pointed may be put in fear. A loaded revolver pointed at a person within shooting distance is a dangerous weapon as a matter of law. Though there is some conflict in the cases, the rule which in my opinion is supported by reason and by the weight of authority is this: The prosecution makes out a *prima facie* case from which the jury may infer that the gun or pistol was loaded, and that consequently it was a dangerous or deadly weapon, when it is proved that the weapon was pointed at the person assailed, within shooting distance, and that the act was accompanied with a threat, evidenced by words or conduct, indicating an intention to fire, the person at whom the weapon was pointed not knowing but that it is loaded. (Note to *Territory of Arizona* v. *Gomez*, 14 Ariz. 139 [42 L. R. A. (N. S.) 975, 125 Pac. 702].) In *Lipscomb* v. *State*, 130 Wis. 238 [109 N. W. 986], a robbery case, the court says: "A loaded revolver pointed at a person within shooting distance is a dangerous weapon as mattter of law. This does not mean that it was necessary in the present case for the state to introduce proof that some person loaded the revolver or saw the cartridges in it. Under the weight of authority, when the state proves that a gun or revolver was pointed at a person within shooting distance with a threat or other words indicating intention to

fire, the person assailed not knowing but what it is loaded, the state has made *prima facie* proof that the gun or revolver is loaded and consequently a dangerous weapon. . . . The case of *Nevada* v. *Napper*, 6 Nev. 113, holding to the contrary seems to stand practically alone, and is disapproved." In my opinion this rule states the only practical view to be taken in the enforcement of statutes dealing with assaults or robberies, where the weapon used to intimidate the victim is a gun or a pistol.

The evidence in this case, when considered in the light of the above-mentioned rule, is amply sufficient to warrant the inference that the pistols were loaded, and that, therefore, the robbery was committed with dangerous and deadly weapons.

A petition for a rehearing of this cause was denied by the district court of appeal on May 23, 1925, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 25, 1925.

All the Justices concurred.