[Crim. No. 1315.   Third Appellate District.—January 25, 1934.]

THE PEOPLE, Respondent, v. BENJAMIN KASCH, Appellant.

J. O. Stemmler for Appellant.

U. S. Webb, Attorney-General, and Jess Hession, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Defendant was charged in an information with the crime of issuing a check for the payment of money on a bank without having sufficient funds or credit thereat, with intent to defraud.

A plea of not guilty was interposed, a jury waived and the issue of the guilt or innocence of the accused was tried before the court, and the defendant found guilty as charged. A motion for a new trial was presented and denied. The defendant now prosecutes this appeal from the judgment and the order denying that motion.

The defense was an alibi and the testimony is sharply conflicting and irreconcilable. It is the contention of appellant that the evidence adduced by the prosecution does not establish the guilt of the defendant to a moral certainty and beyond a reasonable doubt but on the other hand establishes the innocence of the defendant.

W. H. Davis, the complaining witness, testified that on Saturday, August 12, 1933, between the hours of 8:30 and 9 o'clock in the evening, a man whom he identified as the defendant called at his house and arranged for the purchase and delivery of certain chicks. Upon that occasion they were together about fifteen minutes, part of that time being in a well-lighted brooder house. According to the arrangements the prospective buyer returned the following morning about 6 o'clock and the chicks were then crated and delivered. At that time the complaining witness and the man whom he identified as the defendant were together approximately an hour selecting the chicks and constructing the crates in which they were taken away. Mr. Davis identified the defendant as the man who called upon him on these two occasions, and who delivered to him a check in payment of the chicks, which upon presentation was found to be fictitious.

To prove a scheme or design the district attorney called J. G. H. Hill, who testified that a man whom he identified as the defendant, called upon him and attempted to purchase some chicks but when he attempted to pay for the same

with a check Mr. Hill refused to sell and the deal was off. He fixes the hour at about 11 o'clock in the forenoon and the date either a Tuesday or a Wednesday, a few days after a certain Saturday near the middle of the month. Later in his testimony he concluded the Saturday he had in mind was the twelfth day of August, and that the transaction above narrated took place probably on Tuesday, August 15th.

Another witness, L. G. Goulden, was also called. He testified a man whom he identified as the defendant called at his place about 8 o'clock on the evening of August 18th, and took delivery of certain chicks and paid for them with a check, later found to be fictitious, signing the name "J. Wright" thereto. At that time the witness spent about a half hour with "J. Wright" in selecting the chicks and closing the transaction.

John Ferrell, who lived at the Goulden home, identified the defendant as the man who delivered the check to Mr. Goulden, and also as the same man who, between 1 and 2 o'clock P. M. on August 18th, called and selected certain chicks and spent perhaps a half hour with the witness, and then arranged to return that evening and take them away.

Mrs. Goulden, wife of L. G. Goulden, identified the defendant as the man whom she saw at their place on August 18th.

Upon the part of the defense there were called five witnesses who were acquainted with defendant in varying degrees, who testified as positively, he was at a certain garage in Modesto on the evening of August 12th between the hours of 6 and 10 o'clock, where his car was being repaired, and in a like manner, other witnesses were called who account for the presence of the defendant in the city jail at Stockton, and in Oakland, Vallejo and Sacramento, upon the several dates referred to by the witnesses for the People.

It is not the province of this court to determine the weight of the evidence nor the credibility of the witnesses; that responsibility rests upon the trial judge who had ample opportunity to observe the witnesses upon the stand and to consider the worth of their testimony; and again, upon the motion for a new trial, he had the opportunity of again reviewing the facts and again determining where the truth lay. Where the veracity of a witness is involved the cold record as presented to this court on appeal is of but little

assistance. We must be guided largely by the findings of the trial court.

As was said in the case of *People* v. *Seawright,* 72 Cal. App. 414 [237 Pac. 796] : ''A conflict of evidence as to the identity of one on trial accused of having committed an offense presents a question wholly within the province of the jury and the conclusion will not be disturbed on appeal.''

On the question of identification it was said in *People* v. *Farrington,* 213 Cal. 463 [2 Pac. (2d) 814] : ''The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainty of witnesses in giving their testimony were matters solely for the observation and consideration of the jurors in the first instance, and for consideration of the trial court on motion for a new trial. It has approved the finding of the jury, and on appeal this court may not disturb such finding and the action of the trial court unless we can say, as a matter of law, that there was no evidence to support the conviction.''

As the trial judge said in his summation at the conclusion of this trial: ''The question to be determined by the court is one of fact, namely, did the defendant Benjamin Kasch write and pass, People's Exhibit 1, a check payable to Davis Hatchery and signed by one J. P. Kelley. . . . The writing, of course, is not conclusive in this case. There are, however, certain characteristics to which the court will call attention. The maker of the check designated as People's Exhibit 1 apparently experienced some difficulty in his up-strokes. (Here the trial court went into an analysis of various letters and figures in the exemplars before him, then concluded that the handwriting, although indicative of guilt, was not conclusive.) . . . What seems to the court to be a singular circumstance but by no means conclusive is the various kinds of letters the defendant made in the handwriting in People's Exhibit 3 (exemplars). I can see no occasion myself when a man is called upon to furnish an example of his handwriting, why he should vary that handwriting so many times in five lines; it may be due to nervousness on his part but more likely due to a conscious effort to disguise his writing.

''The court entertains some doubt of this man's guilt and I dare say a great many juries in deliberating from time to time on criminal cases entertain some doubt, but that is

not the test. The test is: Is it a reasonable doubt? All human affairs, being dependent upon moral evidence, are open to more or less doubt, but is a doubt a reasonable doubt?

"Now, some four or five witnesses in this cause all appearing to the court as being disinterested, have positively identified this defendant as being the man who mulcted various poultry raisers in this county of small sums of money. I can believe from my long experience that one man or two men might be mistaken in their identification of this defendant, but I cannot believe that four or five or six men could be mistaken about a positive identification of this defendant. Counsel will recall that the court, in a somewhat informal manner, called the attention of these identifying witnesses to the responsibility they took in going upon the stand and identifying this man with the result that he might be incarcerated in prison, both older men, and both of those witnesses after this admonition steadfastly maintained that this man was the man who had passed the checks."

Counsel for defendant urges that the People have not established the guilt of the defendant to a moral certainty and beyond a reasonable doubt. That again brings us to the weight and credibility of the witnesses. If they were entitled to full faith and credit, then the crime was amply proved, and we must accept the conclusion of the trial judge as to the degree of credibility to be attached to their testimony.

There is no issue of law involved, the entire argument of counsel going to the weight and credibility of the witnesses, and as before stated, that is a matter within the province of the trial court. There being ample testimony to support the conclusion and finding of the court, the judgment and order must be affirmed.

It is so ordered.

Thompson, J., and Plummer, J., concurred.