[Crim. No. 12685. Second Dist., Div. One. Apr. 10, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD WILLARD ROSTAMO, Defendant and Appellant.

Harvey Giss, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—The trial court found defendant guilty of two counts of first degree robbery (§ 211, Pen. Code); he appeals from judgment and order denying motion for new trial. Appeal from the order is dismissed.

Around 10:30 p.m. Larry LaBaron, a member of the Reserve Police Department of Long Beach, armed with a loaded .38 six-inch Smith and Wesson, Model K revolver in his belt, left his apartment to search the premises. As he walked out defendant approached him from the rear and stuck a gun in his back. LaBaron turned around and faced defendant who was holding what "looked like a small caliber weapon" and which LaBaron recognized as a "lethal pistol." He pointed at LaBaron's weapon and told him to drop it, which he did. Defendant then ordered LaBaron to raise his hands in the air and throw him his wallet. In the wallet defendant noticed several identification cards; LaBaron told him he was a reserve officer with the police department. Defendant then stuck one of the guns (LaBaron could not say if it was his or defendant's gun) into the waistband of his overalls. At that moment Robert Litzinger, who previously had twice seen defendant lurking on the premises and had called the police, came out of his apartment; at once he was confronted with defendant who was pointing "a revolver in his right hand over . . . the crotch of his left arm" at LaBaron who had his hands in the air; he saw a second gun tucked in the waistband of defendant's pants under his overalls. Defendant ordered Litzinger toward LaBaron and told him to throw him his billfold and empty his pockets, which he did; defendant ordered him back a couple of steps and picked up the wallet and change which Litzinger had put on a block wall and took $2 out of the wallet. He then told the two men to turn around and squat on their heels; later they again faced him, and defendant ordered them to turn their backs. He escaped just as a police vehicle arrived.

The defense consisted of an alibi and defendant's denial that he held up LaBaron or Litzinger or was anywhere near the vicinity.

The crime of robbery to be in the first degree must be perpetrated by torture "or by a person being armed with a dangerous or deadly weapon, . . ." (§ 211a, Pen. Code)

Accordingly, the trial judge found defendant ''to have been armed with a deadly weapon in each offense alleged in Count[s] I and II'' and fixed the robbery to be in the first degree. While the information alleged that at the time of the commission of each offense defendant was ''armed with a deadly weapon, to wit, a .22 cal. revolver,'' the trial judge did not specify the gun he found to be the ''deadly weapon.''

 Appellant's argument that the gun he held on the two men could not constitute a ''deadly weapon'' is predicated on his claim that there is no evidence that the revolver was loaded.

When defendant held LaBaron and Litzinger at bay he had in his possession, on his person and readily available for his use, two guns—LaBaron's .38 Smith and Wesson and his own .22 caliber revolver. The record establishes without contradiction that LaBaron's gun was loaded; but there is no direct evidence concerning defendant's small caliber weapon. Inasmuch as the testimony of the two men does not contain a description of the gun defendant held on them, appellant's factual argument can only be based on his supposition that it was LaBaron's gun and not his own that he stuck into the waistband of his pants and that it was his .22 revolver that he pointed at the two men. LaBaron apparently could not say which gun defendant put in his waistband; he testified ''. . . he [defendant] stuck in his—my gun, or he stuck in his gun—well, he stuck one of the weapons into something inside his clothing, into a waistband of some type.'' While LeBaron described the gun with which defendant poked him in the rear before surrendering his own gun as looking ''like a small caliber weapon,'' a ''lethal pistol,'' neither victim described the gun defendant thereafter pointed at them. Assuming, therefore, that defendant held the two victims with his own gun, it is undisputed that during that time he also had on his person, stuck in the waistband of his pants, LaBaron's loaded .38 six-inch Smith and Wesson revolver.

LaBaron was the first to be robbed; the loot taken from him included his loaded revolver. However, the robbery of LaBaron did not end there. Obviously to make good his escape, it was necessary for defendant, after disarming LaBaron, to take his gun, thus, his getaway from the scene with LaBaron's loaded revolver was a continuation of LaBaron's holdup. (*People* v. *Wallace*, 36 Cal.App.2d 1, 4-5 [97 P.2d 256]; *People* v. *Perhab*, 92 Cal.App.2d 430, 434-435 [206 P.2d 1133].) This means, then, that the two robberies were perpetrated by

defendant while he had LaBaron's loaded revolver on his person. (*People* v. *Hood,* 160 Cal.App.2d 121, 122 [324 P.2d 656].) This made him "armed" with a loaded gun at the time of the commission of the two offenses within the meaning of section 211a, Penal Code. (*People* v. *Hall,* 105 Cal.App. 359, 362 [287 P. 533].)

In *People* v. *Wallace,* 36 Cal.App.2d 1 [97 P.2d 256], the court rejected the argument that the only dangerous or deadly weapon figuring in the commission of the robbery was the weapon obtained as a part of the loot, and that such possession does not measure up to the requirements of section 211a, Penal Code; it held that "thus armed while they 'perpetrated' the robbery, it matters not from what source they obtained the dangerous or deadly weapon in question." The court continued at pages 4-5: "It is the law that the 'perpetration' of the crime of robbery is not completed the moment the stolen property is in the possession of the robbers. The escape of the robbers with their ill-gotten gains by means of arms is as important to the execution of the robbery as gaining possession of the property. . . .

"Robbery . . . includes, as does larceny, the element of asportation; and the appropriation of another's property at the scene of the hold-up is a transaction which continues after the perpetrators depart from the place where the property was seized. (*People* v. *Raucho,* 8 Cal.App.2d 655, 664 [47 P.2d 1108] ; *People* v. *Green,* 93 Cal.App. 435, 436 [269 P. 687] ; *People* v. *Melendrez,* 25 Cal.App.2d 490, 494 [77 P.2d 870].)

" . . . . . . . . . . . .

"Neither the definition of robbery nor the specification of the degrees thereof contemplate that any fine distinctions shall be drawn for the benefit of highwaymen. . . . If at any time during the progress of the 'taking' or while the robbery is being 'perpetrated', the robber arms himself or becomes armed with a deadly weapon, he brings himself within the pale of section 211a of the Penal Code."

Thus, in accomplishing the two robberies, defendant had in his possession, and on his person available for his use, LaBaron's loaded revolver. Assuming, then, that he pointed his own gun at the victims, the fact that he did not intentionally expose, display or use LaBaron's revolver in committing his criminal acts is not material; defendant nevertheless was "armed" with a deadly weapon in perpetrating the offenses within the meaning of section 211a. (*People* v. *Hall,* 105

Cal.App. 359, 361 [287 P. 533]; *People* v. *Mack,* 171 Cal.App. 2d 631, 632 [341 P.2d 334]; *People* v. *Anderson,* 236 Cal. App.2d 419, 431 [46 Cal.Rptr. 1].) " 'Armed' with a dangerous weapon means furnished or equipped with weapons of offense or defense. [Citation.] Section 211a of the Penal Code, which declares that 'all robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon, is robbery in the first degree,' does not require proof that there was an actual assault upon the person with a deadly weapon, but only that the accused was armed with a dangerous or deadly weapon. (*People* v. *Seawright,* 72 Cal.App. 414 [237 P. 796].) " (*People* v. *Hall,* 105 Cal.App. 359, 361-362 [287 P. 533]; *People* v. *Rainey,* 125 Cal.App.2d 739, 741 [271 P.2d 144].) In *People* v. *Mack,* 171 Cal.App.2d 631 [341 P.2d 334], defendant robbed a liquor store owner who "saw the handle of a gun protruding from the waistband of his trousers" (p. 632); this the court held was sufficient to show him "armed" with a dangerous weapon. "Nor must the defendant use or attempt to use the gun or even display it in order to be found guilty of armed robbery. 'Whether or not they exposed these deadly weapons in order to carry out their criminal act is of no consequence. The fact that they had them in their possession available for immediate use is sufficient to bring the case within the statute. "Armed" with a dangerous weapon means furnished or equipped with weapons of offense or defense.' (*People* v. *Hall,* 105 Cal.App. 359, 361 [287 P. 533]; . . .)" (*People* v. *Anderson,* 236 Cal.App.2d 419, 431 [46 Cal.Rptr. 1].)

While the information charged defendant in both counts with being "armed with a deadly weapon, to wit, a .22 cal. revolver," the trial judge did not specify the gun he found to be the "deadly weapon." Inasmuch as the evidence fully supports the finding based upon defendant's possession of the loaded .38 revolver, we can assume in support of the judgment that the trial judge so found. Any variance between the allegation of the accusatory pleading and the proof arising out of this assumption could not be classified as material; it is slight and nonprejudicial. "The test of the materiality of a variance is whether the indictment or information so fully and correctly informs the defendant of the criminal act with which he is charged that, taking into consideration the proof which is introduced against him, he is not misled in making his defense, or placed in danger of being twice put in jeopardy for the same offense." (*People* v.

*LaMarr,* 20 Cal.2d 705, 711 [128 P.2d 345].) Defendant could not have been misled "in making his defense" for he denied that it was he who held up LaBaron and Litsinger; he offered an alibi.

■ But in the frame of evidence, it is not necessary to rely upon LaBaron's loaded gun to sustain the trial judge's finding that defendant was armed with a "deadly weapon." While it is true that there is no direct proof that defendant's .22 caliber revolver was loaded, the circumstances fully justify the conclusion that it was. Direct evidence that the revolver pointed at the two victims was lethal is not essential. Here, that element of the crime was supplied by the testimony of LaBaron, a reserve officer with the Long Beach Police Department who knew guns, that he recognized it as a "lethal pistol," and by evidence of defendant's conduct, his orders and the manner in which he handled the weapon during the robberies. Defendant's declarations and conduct, and the weapon's description are sufficient to support an inference that at the time of the robberies he was armed with a deadly weapon. (*People* v. *Salcido,* 186 Cal.App.2d 684, 687 [ 9 Cal.Rptr. 57]; *People* v. *Newman,* 102 Cal.App.2d 302, 306 [227 P.2d 470].)

LaBaron described the revolver with which defendant poked him in the rear and turned him around and subsequently held on him, as a "small caliber weapon" which he recognized as a "lethal pistol"; it "was," he testified, "'enough to convince [him] he meant business." When 'confronted with the weapon, it was sufficient to cause LaBaron to obey defendant's orders to drop his loaded revolver to the ground, put up his hands, back away with his hands up and surrender his wallet; it was enough to convince Litzinger, a late arrival at the scene, to follow defendant's orders to "come here," stand near LaBaron, give him his wallet and empty his pockets; and sufficient to compel both victims to turn around and squat on their heels and later turn their backs while he escaped.

While no verbal threat of physical harm was made by defendant to either LaBaron or Litzinger, threats, though unspoken, surely were present when defendant shoved his pistol into LaBaron's back, and subsequently pointing it at both victims, ordered them to surrender their valuables. As said of such conduct in *People* v. *Newman,* 102 Cal.App.2d 302 [227 P.2d 470], "Actions speak louder than words." (P. ·306.) In *Newman,* one of the three robbers said, " 'we may

'have to shoot somebody,' '' but the revolver "was never 'found or described." (P. 306.) No threats of bodily harm were made by defendant in *People* v. *Salcido,* 186 Cal.App.2d 684 [9 Cal.Rptr. 57] ; in addition, there was no direct evidence that the pistol he held was loaded (p. 687). While the court in *Salcido* and *Newman* permitted the inference that the gun was deadly from defendant's manner of handling the weapon and his conduct during the robberies, the court in 'People v. *Navarro,* 212 Cal.App.2d 299 [27 Cal.Rptr. 716], on 'facts not as strong as those at bar, made the following statement : ''It is not necessary that a gun be loaded to be a deadly weapon (*People* v. *Salcido,* 186 Cal.App.2d 684 [9 Cal.Rptr. 57] ) ; therefore, the court did properly instruct the jury that the crime was robbery in the first degree.'' (P. 303.) As here, there were no verbal threats in *Navarro*—Vargas ''drew the pistol and informed the proprietor that this was a holdup . . . the proprietor was ordered to lie face down on the floor and remain quiet . . . he also ordered the proprietor to hand over any money he had. . . .'' (P. 301.) Assuming then that it was defendant's own .22 caliber revolver he pointed at LaBaron and Litzinger, and assuming further that the trial court's finding that defendant was armed with a deadly weapon referred to the ''.22 cal. revolver,'' under the above authorities the evidence is sufficient to support the reasonable inference that the gun was loaded.

On the evidence before him, the trial judge could as well have found that defendant was armed with a ''dangerous weapon.'' (§ 211a, Pen. Code.) Either LaBaron's loaded .38 Smith and Wesson or defendant's .22 caliber revolver could have been used as a club or bludgeon ; defendant did, in fact, use the .22 as such by poking it into LaBaron's back and shoving him around. Indeed, this use of the revolver even before robbing either victim is indicative of defendant's predilection for force from which the reasonable inference could be drawn that even had the gun not been loaded and had the two men refused to obey his orders, in all probability, defendant would have used the weapon to hit his victims over the head. ''Section 211a of the Penal Code provides that robbery 'perpetrated . . . by a person being armed with a dangerous or deadly weapon' is robbery in the first degree. The words 'dangerous or deadly' are used disjunctively and are not equivalents. (See *People* v. *Seawright,* 72 Cal.App. 414, 419 [237 P. 796] ; *State* v. *Lynch,* 88 Me. 195, 197-198 [33 A. 978, 979].) Thus, it is not necessary to show that the

weapon is deadly so long as it can be shown that it is dangerous. (*People* v. *Coleman,* 53 Cal.App.2d 18, 28 [127 P.2d 309].) . . . The prosecution does not have to prove either that the gun was loaded (*People* v. *Raleigh,* 128 Cal.App. 105, 108 [16 P.2d 752]; *People* v. *Egan,* 77 Cal.App. 279, 284 [246 P. 337]) or that it was real (*People* v. *Ward,* 84 Cal.App.2d 357, 360 [190 P.2d 972]). Any pistol, even a short one, may be a 'dangerous' weapon within the meaning of the statute since it is capable of being used as a bludgeon. (See *People* v. *Hood,* 160 Cal.App.2d 121, 122 [324 P.2d 656].) It is not necessary to show that defendant intended to use it. (*People* v. *Raleigh,* 128 Cal.App. 105, 110 [16 P.2d 752].) ██ A jury may be instructed that if it finds that the gun was real, whether loaded or not, then the crime committed is robbery in the first degree." (*People* v. *Aranda,* 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.