STATE OF CONNECTICUT *v.* MILTON E. ANDERSON

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and A. ARMENTANO, Js.

Argued March 15—decision released July 10, 1979

*Richard Emanuel,* assistant public defender, with whom, on the brief, were *James D. Cosgrove,* chief public defender, and *Enrico Vaccaro,* assistant public defender, for the appellant (defendant).

*Robert E. Beach, Jr.,* assistant state's attorney, for the appellee (state).

LOISELLE, J. The defendant was charged in a two-count information on March 29, 1974, with robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and with larceny in the third degree in violation of General Statutes § 53a-124 (a) (1). Following a trial to the court, the defendant was found not guilty of robbery in the first degree but guilty of robbery in the second degree on the first count, and guilty of larceny in the third degree on the second count. From this judgment, the defendant has appealed.

The finding as corrected is as follows: David Blasco, the state's key witness, was in charge of a Cumberland Farms store in Cromwell on January 30, 1974, when, at approximately 8 p.m., two men entered the store. One of them brandished a small automatic gun and stated that it was a holdup. The person holding the gun hit Blasco on the side of the head and ordered him to open the safe or else he was going to split his skull. Blasco then opened the safe and handed over $250. At trial, Blasco identified the defendant in court as the man who hit him.

The court found that Blasco had seen in his store on January 14, 1974, the two men who had robbed him. They were there for about five minutes but became nervous and left when other people came in. Shortly thereafter, a customer from another Cumberland Farms store in Cromwell came into Blasco's store and told him the other store had been robbed. He gave a description of the robbers to Blasco. Blasco told him that it seemed to fit the two men who had recently left his store. A policeman, Trooper Jules B. Lloyd, arrived at Blasco's store by mistake; he thought it was the one that had been

robbed. Blasco told him that he thought the same people who robbed the other store had been in his store.

Within a day or two of the January 14 robbery, Blasco was shown six photographs by the police. He identified the defendant as one of the two people who had been in his store. His wife, Linda Blasco, who had been in the store at that time, was shown the same set of six photographs. She also identified the photograph of the defendant as one of the two persons who had been in the store on January 14. Her identification was independent of that of her husband's.

After the January 30 robbery of his store, Blasco was shown the same set of photographs and he again identified the defendant. He told the police that one of the robbers was the same person he had identified previously in connection with the January 14 robbery. Five of the photographs had pieces of paper pasted on the front to cover up the information concerning where the photographs had been taken.

The defendant was presented in the Circuit Court in Middletown on February 26, 1974, for a probable cause hearing. At that time Blasco identified the defendant as one of the two persons who had robbed him on January 30, 1974.

On appeal the defendant has raised three claims of error: (1) the corporeal identification procedure used denied him of his constitutional rights; (2) the photographic identification procedure employed was unnecessarily suggestive and deprived him of due process of law; and (3) robbery in the second degree is not a lesser included offense of robbery in the first degree.

The defendant's first assignment of error is that the corporeal identification made by the state's key witness deprived him of the effective assistance of counsel. The defendant claims that at the probable cause hearing held on February 26, 1974, Blasco, the state's key witness, was brought into a courtroom where the defendant was seated for the purpose of identifying the defendant as the perpetrator of the offenses in question. At the probable cause hearing, Blasco testified that prior to the hearing he had gone into the courtroom to make the identification at the request of the prosecution. Counsel for the defendant was not present at that time and the defendant was the only black person in the room. The defendant asserts that this one-on-one type of confrontation is constitutionally impermissible under *Moore* v. *Illinois,* 434 U.S. 220, 98 S. Ct. 458, 54 L. Ed. 2d 424 (1977). The defendant admits in his brief that this claim was not raised below, either at the hearing on the motion to suppress[1] or at the trial itself. The defendant asserts, however, that the necessary factual foundation to support this constitutional claim may be found in the transcript from the February 26, 1974, probable cause hearing. What the defendant is proposing is that this court should determine the factual issues involved here and then decide upon the facts which we find whether the identification in question violated the dictates of *Moore* v. *Illinois,* supra. We cannot do this even though the defendant raises a constitutional issue that fits within the ambit of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), because there is no factual backdrop against which we may

[1] Prior to trial, the defendant filed a motion to suppress the photographic identification evidence and testimony. This motion was denied by the court following a hearing.

weigh the defendant's claim. "This court cannot find facts, nor, in the first instance, draw conclusions of facts from primary facts found, but can only review such findings to see whether they might legally, logically and reasonably be found." *State* v. *Clark,* 160 Conn. 555, 556, 274 A.2d 451 (1970).

The defendant next contends that the trial court erred in denying his motion to suppress the photographic identification. The defendant's claim is that the photographic identification procedure employed was impermissibly suggestive and that the court erred in finding that the in-court identification had an independent basis. As previously stated, the victim was shown six photographs on two occasions, once after the first Cumberland Farms robbery and the second time right after the store in which he was working had been robbed. The only difference among the six photographs was that there was writing on the back of one of them. Blasco was not shown the backs of the photographs. The photograph with writing on the back was not the one chosen by the witnesses. Further, the court found that there was no hesitancy in Blasco's identification.

The standard to be applied in this situation is well established. "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Williams,* 173 Conn. 545, 552, 378 A.2d 588 (1977); *State* v. *Kinsey,* 173 Conn. 344, 346-47, 377 A.2d 1095 (1977).

In *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977), the United States Supreme Court stated that "reliability is the linchpin in determining the admissibility of identification testimony." The court then reiterated the factors that were discussed in *Neil* v. *Biggers,* 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), and applied them to the photographic identification situation. They are: (1) the opportunity to view; (2) the degree of attention of the observer; (3) the accuracy of the description; (4) the witness' level of certainty; and (5) the time between the crime and the confrontation. *Manson* v. *Brathwaite,* supra, 114–16. The court in the present action found that the procedures employed in showing the same six photographs on two occasions were "not unnecessarily suggestive." Moreover, the court found that Blasco had a sufficient opportunity on January 14 and again on January 30 to view the defendant to make an independent in-court identification. Linda Blasco also had a sufficient opportunity on January 14 to make an independent identification. Based on the findings, it is obvious that the trial court in deciding the motion to suppress correctly applied the tests enunciated in *Brathwaite,* supra, and *Neil* v. *Biggers,* supra. Therefore, it was not in error in concluding that the identification should not be suppressed.

The defendant's final claim is that the crime of robbery in the second degree of which he was convicted was not a lesser included offense of robbery in the first degree, which was the crime charged in the information. In *State* v. *Brown,* 163 Conn. 52, 61–62, 301 A.2d 547 (1972), this court rejected the so-called "evidence test" and adopted the following test: "whether it is possible to commit the greater offense, in the manner described in the information

or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime." *State* v. *Vasquez,* 176 Conn. 239, 241, 405 A.2d 662 (1978) ; *State* v. *Harden,* 175 Conn. 315, 323, 398 A.2d 1169 (1978); *State* v. *Troynack,* 174 Conn. 89, 97, 384 A.2d 326 (1977). The defendant was charged with violation of General Statutes § 53a-134 (a) (2). In 1974, when the alleged robbery took place, § 53a-134 read as follows: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon or dangerous instrument."[2] In 1974, the statutory description of robbery in the second degree, § 53a-135, was: "(a) A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present; or (2) he or another participant in the crime threatens the use of what purports to be or what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."[3]

As the charge in the first count was restricted to a robbery while being armed and there is no bill of particulars that elaborates or makes more specific the crime charged, the test for determining whether robbery in the second degree is a lesser included offense is whether "being armed" is a necessary element of the crime as charged. Webster's Third

---

[2] In 1975, "or dangerous instrument" was deleted from General Statutes § 53a-134 (a) (2).

[3] In 1975, General Statutes § 53a-135 (a) was changed to: ". . . or (2) in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

New International Dictionary defines the term "armed" as "furnished with weapons of offense or defense: fortified, equipped." Actually, "armed" is commonly interpreted as simply requiring that a weapon be in one's possession. *People* v. *Rostamo,* 249 Cal. App. 2d 983, 986–87, 58 Cal. Rptr. 74 (1967); *People* v. *Dozie,* 224 Cal. App. 2d 474, 476–77, 36 Cal. Rptr. 728 (1964); *State* v. *Mann,* 361 A.2d 897 (Me. 1976). It is apparent that it is not necessary for a weapon to be exhibited, displayed, utilized or referred to in order for one to be considered "armed." Consequently, to commit robbery in the first degree while being armed, it is not necessary that the accused be either (1) "aided by another person actually present; or (2) he or another participant in the crime threatens the use of what purports to be or what he represents by his words or conduct to be a deadly weapon or a dangerous instrument." One merely has to be armed. An example which comes to mind would be the situation where the accused has a loaded gun in his pocket and commits a robbery without ever using or referring to the weapon. He would be armed but never have displayed or threatened the use of a weapon as required in the crime of robbery in the second degree. And if no one was present aiding the accused, he would not be guilty of robbery in the second degree. Therefore, under the particular information in the present case, robbery in the second degree is not a lesser included crime. The court was in error in finding the defendant guilty of robbery in the second degree.

Double jeopardy; *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *Sanabria* v. *United States,* 437 U.S. 54, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978); precludes retrying

the defendant on the first count since he was acquitted of robbery in the first degree and because robbery in the second degree is not a lesser included offense of robbery in the first degree.[4] Using the tests previously mentioned, however, we find that the second count of larceny in the third degree is not a lesser included crime of robbery in the first degree, and therefore it was correct to charge it as a separate offense.

There is no error as to the second count; there is error as to the first count; the case is remanded with direction to set aside the judgment as to the first count and to adjudge the defendant not guilty of that count.

In this opinion the other judges concurred.

---

[4] This conclusion is based on the unusual facts found in this case as discussed more particularly above.